FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

## UNITED STATE DISTRICT COURT

### FOR THE DISTRICT OF MARYLAND

2010 FEB 24 ₽ 1: 07

CLERK'S OFFICE
AT BALTIMORE

BY_____DEPUTY

| | |
|---|---|
| Peter J. Ianniello,<br>v<br>Tenax Corporation, Inc., Defendant | Civil Action No.: |
| Peter J. Ianniello et al<br>v<br>Tenax International SpA, Defendant | |
| Peter J. Ianniello<br>v<br>Zelios, Defendant | **CCB10CV 448**<br><br>Civil Action No.:<br>**JURY TRIAL DEMANDED** |
| Peter J. Ianniello<br>V<br>Marco Gianoni, Defendant | |
| Peter J. Ianniello<br>V<br>Peter Spruger, Defendant | |
| Peter J. Ianniello<br>V<br>Markus  Kulzoff, Defendant | |
| Peter J. Ianniello<br>v<br>Advanced Geotech Systems, LLC, Defendant | |
| Peter J. Ianniello<br>v<br>Syntec LLC, Defendant | |
| Peter J. Ianniello, Plaintiff<br>v.<br>Nath & Associates, LLC, Defendant | |
| Peter. J. Ianniello | |

|  |  |
|---|---|
| v<br>Cesare Beretta, Defendant<br><br>Peter J. Ianniello<br>v<br>Giulio De Giuseppe, Defendant<br><br>Peter J. Ianniello<br>v<br>John Doe, Defendant |  |

## COMPLAINT

Peter Ianniello ("Ianniello") located at 2000 Level Rd Havre de Grace, Maryland hereby sues the defendants, Tenax Corporation ("Tenax"), Tenax International SpA (Tenax), Syntec, LLC ("Syntec"), Advanced Geosynthetic Systems, ("AGS") and Nath & Associates Professional Limited Liability Company ("Nath"), Zelios, Giulio De Giuseppe, Cesare Beretta and state as follows:

### Facts

1)   Ianniello is a United States Citizen and resides in the State of Maryland.

2)   Tenax is a Maryland corporation with its principal office at 4800 East Monument Street, Baltimore, Maryland.

3)   Tenax International is a Switzerland corporation located in Lugano, Switzerland.

4)   Tenax SpA is an Italian Corporation located in Vigano, Italy.

5)   Tenax Corporation, Tenax International and Tenax SpA are collectively referred to as "Tenax".

6)   Syntec is a Maryland LLC with its principal office at 4800 East Monument Street Baltimore, Maryland.

7)   AGS is a Maryland LLC with its principal office at 4800 East Monument Street, Baltimore, Maryland.

8)   Nath is a Professional Limited Liability Company with its principal office at 112 South West Street, Alexandria, Virginia.

9)   Zelios was a Lichtenstein Company believed to be located at LandStrasse 11 9495 Treisen.

10)  Plaintiff is a former employee of Tenax.

4

11)  Plaintiff resigned from Tenax Corporation in 1999 and at the request of Cesare Beretta and Giovanni Capra, Plaintiff rescinded his Tenax resignation, founded AGS agreed with Tenax to take a 12% ownership interest in AGS; and served as AGS Pres. and CEO until December 2004.

12)  Plaintiff maintains his 12% AGS membership.

13)  Plaintiff has agreements with Tenax, Zelios and AGS relating to Plaintiff's patents utilized in landfill, road, pavement, and construction.

14)  Syntec, created in 2009, sells Plaintiff patents.

15)  Tenax's officers also serve as officers for both Syntec and AGS.

16)  Mr. Giulio de Giuseppe is a citizen of Italy; President of Tenax Corporation ("Tenax"); officer of Tenax International; officer of Tenax SpA; and AGS holding company Manager; but is not an AGS member.

17)  Mr. Cesare Berretta is a citizen of Italy; and is believed to be Chairman of Tenax International; Chairman of Tenax SpA; Chairman of Tenax Corporation; President and CEO of AGS; and Director of Syntec; but is not an AGS member.

18)  Giovanni Capra is a Tenax Officer; AGS Manager; AGS Member; Syntec President and CEO; and believed to be a resident of Florida.

19)  Aigen Zhao is Vice President Tenax; AGS Member; AGS Tax Matter Partner; Syntec Officer; and resident of Maryland.

20)  Gregg Williams is a resident of Houston, Texas; AGS Member, and former Tenax employee.

21)  Ianniello, Williams, Capra, and Zhao all served as AGS Managers

5

and Members from 2000 until December 2004.

22)   Cesare Beretta served as AGS Chairman from 2000 and in Dec 2004 became President and CEO.

23)   In December 2004, Giulio de Giuseppe, Luciano Galimberti. Mario Beretta, replaced Ianniello, Williams, and Zhao as Managers of AGS.

24)   Mario Beretta is resident of Italy, Tenax founder; and Cesare Beretta's father.

25)   Luciano Galimberti is believed to be a resident of Italy and Tenax Chief Financial Officer.

26)   AGS was created to compensate its members as inventors, business developers; e-commerce developers; and for other intangible assets that created products sales which created great value for Tenax.

27)   Syntec, formed in 2009, benefits from AGS patents; e-commerce web sites such as landfilldesign.com and roadway.com; and other intangible assets that created products sales and prior to formation of Syntec served as the basis of the Tenax/AGS Triplanar Division.

28)   Zelios A.G. Balzers ("Zelios") is a Lichtenstein company believed to be under the control of Tenax, Beretta, and de Giuseppe.

29)   Marco Gianni is believed to be a resident of Liechtenstein and in 2005 was represented to Plaintiff by Tenax, AGS, Beretta, de Giuseppe, Saul Ewing, and Fetter and Gartner to be a Director of Zelios.

30)   Peter Spruger is upon information and belief believed to be a resident of Liechtenstein and Zelios Director.

31)   Markus  Kulzoff is upon information and belief believed to be a

6

resident of Liechtenstein and Zelios Director.

32) Upon information and belief, Fetter and Gartner represents AGS and Zelios.

33) Upon information and belief, neither Giulio de Giuseppe nor Cesare Beretta was ever published in the Liechtenstein government charter that states whom the directors and managers are for Zelios.

34) Zelios owns 56% majority interest in AGS and upon reason and belief is an owner of Tenax.

35) Ianniello was the inventor of patents and patent applications the ("Ianniello Patent Estate").

36) The Ianniello Patent Estate generated global sales in excess of $100,000,000 for Tenax and its affiliate companies.

37) The Ianniello Patent Estate was assigned in 2005 to Tenax/AGS per Patent Assignment, License, Royalty, Dividend Distribution Agreement by and agreement prepared by Saul Ewing counsel Eric Orlinski.

38) Saul Ewing, Tenax, Beretta, de Giuseppe, and AGS represented to Plaintiff and Plaintiff's counsel that Zelios had the authority to enter into the Patent Assignment, License, Royalty, and Dividend Distribution Agreement with Plaintiff.

39) The Patent Assignment, License, Royalty, Dividend Distribution Agreement wherein Ianniello assigned patents included these patents and patent applications herein after referred to as "Ianniello Patent Estate":

    (1) U.S. Pat. Ser. No.: 09/501,318, entitled "Void Maintaining Geosynthetic Laminates and Drainage

7

Systems" ('318 applications);

(2)   U.S. Pat. Ser. No.: 10/366,691, entitled "High Friction Scrims, Geonets, Laminates, and Methods for Using and Making Them" ('691 application).

(3)   U.S. Pat. Ser. No.: 10/232,811, entitled "Void Maintaining Synthetic Drainable Base Courses and Methods for Extending the Useful Life of Paved Structures" ('811 applications).

(4)   U.S. Pat. Ser. No.: 10/366,692, entitled "Fuzzy Woven Layers, Geocomposites, Laminates Incorporating them, and Related Methods" ('692 application).

(5)   U.S. Pat. Ser. No.: 10/066,678, entitled "Engineered Tire Particle Aggregates and Constructs" ('678 application).

(6)   U.S. Pat. Ser. No.: 10/668,369, entitled "Color Coding of Geotextiles, and Geocomposites for Use in Laminate Structures and other Geotechnical Applications" ('369 applications.

(7)   U.S. Pat. Ser. No.: 10/817,769, entitled Multiple Zone High-Capacity Geocomposite Drainage Structures and Methods Suitable for Friction Angle Applications" ('769 application).

(8)   U.S. Pat. Ser. No.: 7,309,188, entitled "Drainable Base Course for Landfill and Method for Making the Same" ('188 Patent).

(9)   U.S. Pat. Ser. No.: 7,131,788, entitled "High Flow Void

Maintaining Membrane Laminates, Grids, and Methods" ('788 Patent).

(10) U.S. Pat. Ser. No.: 6,802,669, entitled "Void Maintaining Synthetic Drainable Base Course and Methods for Extending the Useful Life of Paved Structures" ('669 Patent).

(11) U.S. Pat No 6,505,996 entitled "Drainage Systems with Unitary Void Maintaining Geosynthetic Structure and Method for Constructing Systems".

(12) U.S. Pat. Ser. No.: 5,255,988 entitled "Multiple Layer Net Structure for Fluid Drainage Particularly for Geotechnical Use" ('988 Patent).

(13) U.S. Pat. Ser. No.: 5,891,549, entitled "Sheet-Like Structure with Surface Protrusions for Providing Spacing, Grip Enhancing, Draining Elements, and the Like" ('549 Patent).

(14) U.S. Pat No. 6,972,269 entitled " Net-Like Structure for geotech use".

40) Tenax reported its sales for AGS that utilized the Ianniello Patent Estate as the "Tenax Triplanar Division".

41) The Tenax Triplanar Division conducted interstate and international commerce and marketed the Ianniello Patent Estate utilizing wire and mail and included intangible assets such as Ianniello's know-how for conceiving and implementing e-commerce

9

web-sites such as Landfilldesign.com and Roadwaydesign.com.

42) The Tenax Triplanar Division sold more than $100,000,000 of Ianniello Patent Estate products.

43) On September 1, 2003, Contech Construction Products, an Ohio Corporation, entered into a distribution agreement with Tenax wherein it obtained certain rights to market and sell patents within the Ianniello Patent Estate.

44) Contech Construction products paid a $750,000 promotional service fee for each year that it maintained the rights to market the Ianniello patent portfolio for a five-year term.

45) In 2004, Tenax commissioned Legg Mason to perform due diligence, and establish a value for AGS/Tenax Triplanar Division and all its tangible and intangible assets.

46) In 2004, Legg Mason established this value to be more than $20,000,000 and marketed AGS/Tenax Triplanar Division to industry competitors and private equity firms for more than $20,000,000.00.

47) Beretta reported to AGS' members that the Tenax Triplanar Division had a value in excess of $20,000,000.00.

48) Giovanni Capra reported that the Triplanar Division had value in excess of $20,000,000.00.

49) Legg Mason, Beretta, and Giovanni Capra included in the AGS/Tenax Triplanar Division valuation – the Ianniello Patent Estate and other AGS intangible assets - eventually came under the ownership of Tenax/AGS/Beretta per the 2005 Patent Assignment, Royalty, Dividend, and Distribution Agreement.

50) In 2004, GSE of Houston Texas, offered to purchase the Tenax/AGS

10

Triplanar Division for more than $20,000,000.

51)   From formation of AGS in 2000 until December of 2004, Beretta
      represented he was Zelios.

52)   Ianniello ceased to be an employee of Tenax and President and CEO
      of AGS in December of 2004.   However, Ianniello retained his
      membership interest in AGS.

53)   In 2005, Cesare Beretta reported at the AGS member meeting that
      the transaction failed because the "Board changed their mind".

54)   Tenax, Beretta, de Giuseppe, and engaged in a course of conduct
      to convert AGS value to Tenax and convert value of the Ianniello
      Patent Estate solely for the benefit of themselves and Tenax and to
      the detriment of Plaintiff as inventor and member of AGS.

55)   Tenax, AGS, Beretta and de Giuseppe coordinated interstate and
      international commerce across various jurisdictions.

56)   Tenax, AGS, Beretta, and de Giuseppe created organizations with
      very real conflicts of interests.

57)   Tenax, AGS, Beretta, and de Giuseppe hired and coordinated
      various   counsel   and   assigned   conflicting   duties   to   manage
      conflicting organizations.

58)   The Ianniello Patent Estate, AGS intangible assets, and AGS
      monetary instruments were all controlled by Tenax, AGS, Beretta,
      and de Giuseppe.

59)   Beretta, de Giuseppe, and Tenax all had copies the AGS operating
      agreement.

60)   The AGS operating agreement specified authority as to how funds
      were to be transferred.

11

61)   At times, large sums of money were transferred from AGS to Tenax.

62)   Nath and Associates is an intellectual property law firm in Alexandria, VA.

63)   Defendants and their counsel represented to Plaintiff that Nath and Associates would act as an independent Third Party Administrator ("TPA") patent administrator.

64)   Upon information and belief, Nath administers the Ianniello Patent Estate under the direction of officers of Giulio de Giuseppe.

65)   Nath is an affiliate of Saul Ewing.

66)   The matter in controversy exceeds $75,000 and the case concerns federal issues of law.

Peter J. Ianniello, pro se
2000 Level Rd
Havre de Grace, Maryland 21078
Peter. J. Ianniello @ gmail.com
410-937-2687

2-24-2010

## COUNT ONE

### Ianniello vs. Tenax, AGS, Nath: Mail and Wire Fraud

### (18 U.S.C. §§ 1341 and 1343)

Plaintiffs hereby incorporate Paragraphs One through 67 (¶¶ 1-67), inclusively, and further state as follows:

67) Defendants utilized US mail and wire for years to submit oaths and declarations to USPTO that Defendants submitted all material information that a reasonable USPTO examiner would deem material to patentability.

68) Defendants utilized US mail and wire to communicate with Plaintiff.

69) Defendant utilized US mail and wire to deliver their schemes of non-disclosure and misrepresention in violation of their USPTO oaths, declarations, and duties for the purpose of obtaining or destroying Plaintiff intangible property.

70) Tenax and AGS utilized this scheme of USPTO nondisclosure on numerous Ianniello Patent Estate patents and patent applications that Tenax submitted via US mail and wire to USPTO to defraud Plaintiff of intangible assets for a pattern of nearly two decades.

71) Tenax, AGS, Zelios, Beretta, de Giuseppe, Giannoni, Spruger and Kulzoff further perpetuated their scheme of defrauding Plaintiff of intangible assets when they utilized USPTO to induce Ianniello into entering into the 2005 Patent Assignment, License, Royalty and Distribution Agreement based in large part on Tenax, AGS, Zelios, Beretta, de Giuseppe's representation and contractual obligation to

13

appoint an "independent third party patent administrator".

72) Saul Ewing created the 2005 Patent Assignment, License, and Royalty Distribution Agreement.

73) Nath is a Saul Ewing affiliate.

74) The Defendants collectively schemed and utilized USPTO to commit a series of nondisclosures, material misrepresentations, over years to acquire Plaintiffs intangible asset rights as the Ianniello Patent Estate generated more than $100,000,000 globally for Tenax and its affiliates.

75) utilized this scheme of USPTO nondisclosure

76) , fraud committed wire fraud in schemes which attempts to unlawfully obtain Plaintiffs valuables intangible in which the Defendants utilized the postal system and wire systems on numerous occasions in the commission of committing offenses.

77) The December 2005 Patent Assignment, License, Royalty and Dividend Distribution Agreements states: "*WHEREAS, Ianniello is an inventor on all the Patents and is dependent upon access to the patents through the license agreements referenced herein for his future economic benefit;*

78) Defendants utilized mail, wire, and electronic communications to deprive Plaintiffs of intangible asset property rights; utilized mail and wire fraud to deny Plaintiff access to the patents; and utilized mail and wire fraud to deny Plaintiff economic benefit from his intangible assets and property as an inventor and member of AGS.

79) On November 22, 2005 Giulio De Giuseppe, Tenax President and AGS

Manager, utilized US mail and wire to state "I need to send them to Italy before signing".

80) On November 25, 2006, Piper DLA attorney, Anthony Rosso sent over US wire to Eric Orlinski and Giulio De Giuseppe photos belonging to Peter Ianniello; and these same photos were utilized to produce Master Settlement Exhibit 8 "Evidence of Certain Improvements" for US Patent Application # 20030178122.

81) On February 22, 2006, Tenax filed MI2006A000320 at the Italian patent office with drawings produced from the photographs obtained from the Master Settlement Agreement's Exhibit 8 "Evidence of Certain Improvements" for US Patent Application 20030178122 that identifies Ianniello as the inventor.

82) On Dec 19, 2005 Tenax, AGS, Zelios, Beretta, and de Giuseppe utilized US mail and wire and entered into an assignment and license agreement for US Pat Application 20030178122.

83) After signing the Dec 19, 2005 Patent Assignment, License, Dividend and Royalty Distribution Agreement, Tenax, AGS, Zelios, Beretta and De Giuseppe utilized US mail and wire to export Exhibit 8 US Pat No 20030178122 "Evidence of certain improvement" to foreign entity they controlled for the purpose of defrauding Plaintiff.

84) On February 22, 2006 Tenax filed MI2006A000320 at the Italian Patent office and never disclosed US Patent Application 20030178122.

85) On July 14, 2008, Tenax utilized US mail and wire to file at USPTO, U.S. Pat. App. Ser. No.: 12/087,731 ('731 application),

"Sheet-Like Element Such As a Net, Particularly For Geotechnical Applications" with named inventor Maggioni.

86) On July 14, 2008, Tenax certified, utilizing US mail and wire, under penalty of perjury and certified that all material information a reasonable examiner needed to determine patentability was included in the application and it fulfilled its duty of candor to USPTO.

87) Since July 14, 2008 until January 7, 2010 Tenax and the USPTO corresponded via US mail and wire on at least 40 occasions and the Tenax supplied hundreds of documents via US mail and wire and never disclosed existence of the Ianniello US Pat Application 20030178122.

88) On July 14, 2008, Tenax utilized the US mail and wire to violate Title 37 Federal Regulations 1.56.

89) On July 14, 2008, Tenax utilized the US mail and wire to violate Title 37 Federal Regulations 1.56. for the purpose of defrauding Plaintiff of intangible assets.

90) March 30, 2006, Nath and Associates Ross Epstein utilized US mail and wire to introduce himself to Peter Ianniello as the "Independent Third Party Administrator" of US Pat Application 20030178122 as well as other intangible assets of the Plaintiff.

91) July 2006 Nath and Associates utilized US mail and wire and advised Piper DLA's Anthony Rosso that it possessed the Master Agreement and resolved all representation conflicts that existed.

92) Nath and Associates utilized US mail and wire through out its prosecution of US Pat Application 20030178122 and represented to

USPTO that at all times it performed its duties to disclose all material a reasonable examiner would believe material to patentability.

93)  Nath and Associates had in its possession photographs of US Pat Application 20030178122 as a resulting of possessing the Master Agreement.

94)  Over a period of years, Nath and Associates corresponded with USPTO on more than 50 occasions and sent them via US mail and wire hundreds of pages; but Nath and Associates never provided drawings and/or the photographs of US Pat Application 20030178122; and never disclosed to USPTO the existence of the Tenax SpA filing of US Pat No. 12/087/731.

95)  On July 14, 2008, Nath and Associates utilized the US mail and wire to disclose to Karin Szypszak of the University of North Carolina that it is in fact an affiliate of Saul Ewing.

96)  Upon information and belief, Saul Ewing is the counsel that represents Tenax.

97)  Over a period of years, Nath and Associates utilized the US mail and wire but never disclosed to Plaintiff their conflicted position of being an affiliate of Saul Ewing but rather advocated their independent third party status for the purposes of aiding Tenax, AGS, Beretta, and de Giuseppe at the detriment of Plaintiff.

98)  Nath utilized us mail and wire to commit material nondisclosures to USPTO at the detriment of the Plaintiff and these nondisclosures created very real problems for Plaintiff.

99)  Following the execution of the Master Settlement Agreement,

17

Defendants utilized the US mail and wire; the Defendants engaged in a course of conduct to convert the value of Plaintiffs intangible assets solely for the benefit of themselves and entities they controlled and to the detriment of Plaintiff.

100) On June 4, 2007, Tenax, Beretta, AGS and Nath utilized the US mail and wire exported from the United States claims from Ianniello Patent Estate Applications and then those same Ianniello Patent Estate Applications or very similar patent applications and claims were re-applied for in Switzerland, Italy, and other parts of the world failing to cite Ianniello Estate as prior art or as an inventor.

101) On June 4, 2007, Tenax, Beretta, AGS and Nath utilized the US mail and wire and certified to World Intellectual Property Organization (WIPO) that it provided all material information for patentability under WIPO requirements for Switzerland for "the Berretta '257 application.

102) On June 4, 2007, Tenax, Beretta, AGS and Nath utilized the US mail and wire Nath and Associates filed an international patent application utilizing US mail and wire naming Beretta as the sole inventor on June 4, 2007 in Switzerland ("the Berretta '257 application).

103) November 21, 2007, the Beretta '257 application has addended to it an International Search Report generated by WIP examiner.

104) Since June 4, 2007, the Beretta '257 application was held in secret by the international WIPO rules as filed for 18 months, but was only published and became publically available information on

December 11, 2008.

105) According to the International Search Report, the international examiner cited the Ianniello '691 application to be relevant to the Beretta '257 application.

106) Tenax, Nath, AGS, and Beretta utilized the US mail and wire services and knowingly withheld the Ianniello '691 as being material to Beretta '257 international application.

107) Tenax, Beretta, Nath and AGS utilized the US mail and wire and knowingly withheld from the USPTO examiner the Ianniello '691 as being material to the Beretta '257.

108) On September 10, 2008, Tenax utilized the US mail and wire to file U.S. Pat. Ser. No.: 12/232,017, entitled "Draining and Filtering Net, Particularly for Geotechnical Applications" ("the '017 application"). The '017 application claimed priority to a foreign patent application EP 07425572.

109) On September 10, 2008, Tenax Beretta utilized the US mail and wire certified under oath a declaration that it had knowledge of two relevant pieces of relevant prior art: EPO 083629 and WO2007095979.

110) On September 10, 2008, Tenax, AGS, Beretta utilized the US mail and wire and certified they disclosed all material information a reasonable examiner would need to consider for patentability of the '017.

111) Tenax, AGS, and Beretta, in applying for the '017 application did not disclose any patent identified in the Ianniello Patent Estate, patents assigned to AGS, despite the fact that many of the

19

patents therein are "draining and filtering nets, particularly utilized in geotechnical applications..." and are known to Tenax, AGS, and Beretta.

112) On October 28, 2008, under information and belief, de Giuseppe utilized the US mail and wire applied for European Pat. App. Ser. No.: WO20090565548.

113) On October 28, 2008, under information and belief, de Giuseppe utilized the US mail and wire certified that he complied with WIPO guidelines and supplied all information a reasonable examiner would need to consider for European Pat. App. Ser. No.: WO20090565548.

114) Under information and belief, de Giuseppe is an attorney.

115) Under information and belief, de Giuseppe never applied for an international patent prior to the WO 20090565548 application.

116) Under information and belief, despite full knowledge of the Ianniello Patent Estate assigned to AGS, de Giuseppe did not disclose the existence of one Ianniello patent or application.

117) On July 14, 2008 Tenax utilized US mail and wire and applied and prosecuted the US Pat. Pub No.: 12/087731, entitled "Sheet like element such as net particularly for geotechnical applications" ('731 application")

118) Under information and belief, the drawings utilized in the '731 were obtained from Exhibit 8 "Evidence of Certain Improvements of US Pat Application 20030178122" listing Ianniello as inventor and are material to section 1.15 of the Patent Assignment, License, Royalty, and Dividend Distribution Agreement.

119) Under information and belief, Tenax, AGS, Beretta, Nath, and de

Giuseppe utilized US mail and wire, and breached their oaths and certifications to USPTO for the purpose of perpetuate a fraud the Plaintiff by knowingly not providing material information that a reasonable examiner would consider relevant for the following applications:

(1)     U.S. Pat. App. Ser. No.: 12/087,731 ('731 application), entitled "Sheet-Like Element Such As a Net, Particularly For Geotechnical Applications" with named inventor Maggioni;

(2)     U.S. Pat. App. Ser. No.: 11/599,307 ('307 application), entitled "Multilayer Net for Draining Fluids, Particularly for Geotechnical Use" with named inventor Maggioni;

(3)     U.S. Pat. App. Ser. No.: 12/232,017 ('017 application), entitled "Draining and filtering net, particularly for geotechnical applications" with named inventor Beretta;

(4)     U.S. Pat. App. Ser. No.: 11/167,561 ('561 application), entitled "High-Friction geo-textiles for increasing the stability of landfill drainage layers and other high-friction angle installations, and related methods" with named inventor Beretta;

120)   On August 14, 2009, a meeting was held at Tenax's headquarters in Baltimore, Maryland between de Giuseppe and Ianniello.  At that meeting, de Giuseppe advised Ianniello on August 14, 2009 that AGS was "worth nothing.

121) During the August 14, 2009 meeting, de Giuseppe told Ianniello

that de Giuseppe had instructed Nath to file a petition to revive the U.S. Pat. Ser. No.: 10/366,692, entitled "Fuzzy Woven Layers, Geocomposites, Laminates Incorporating them, and Related Methods" ('692 application) with the intent of negating the Plaintiffs' damages in the Maryland State litigation.

122) On June, 2009 Tenax, AGS, Nath, and de Giuseppe utilized US mail and wire to file in the United States Patent and Trademark Office ("USPTO") a Petition to Revive the abandoned '692 application in June of 2009 under oath characterizing before the USPTO that the '692 was "Unintentional Abandoned."

123) Tenax, AGS, de Giuseppe, and Nath failed to provide the USPTO with the material information that the '692 application is a patent application that was involved in the Maryland State Court litigation, and one specific claim of dispute was whether the '692 was in fact originally 'intentionally' or 'unintentionally' abandoned.

124) De Giuseppe, Tenax, and Nath's utilized US mail and wire to breach their duties of candor before the USPTO and their actions constitute inequitable conduct. Inequitable conduct before the USPTO may render AGS' patents and patents applications unenforceable, and thereby diminish the commercial value of the patent(s) or patent application(s).

WHEREFORE, Ianniello respectfully requests that this Honorable Court:

A.          Order  Defendants  to  release  to  Plaintiff  all communications sent to USPTO via US mail and/or wire wherein the Defendants  Tenax,  AGS,  Syntec,  Nath  and  or  their  appointed representatives declared to USPTO that all material information a reasonable examiner believed material to patentability was properly disclosed to USPTO examiner on patents where Tenax or AGS identified that Mario Beretta, Cesare Beretta, Pier Luigi Maggioni, and Giulio de Giuseppe are inventors.

B.   Order Defendants to release to Plaintiff any and all responses sent to USPTO via US mail and/or wire and communications that occurred between Tenax, AGS, Nath, Syntec, communicated with USPTO examiner on the subject of inventorship and information a reasonable examiner would consider material for the prosecution of patents or patent applications where Mario Beretta, Cesare Beretta, Pier Luigi Maggioni, and Giulio de Giuseppe are identified as inventors.

D.   Order Tenax, AGS, and Nath to release each document sent to USPTO via US mail and/or wire where the patent or patent application applied for by Mario Beretta, Cesare Beretta, Pier Luigi Maggioni, and Giulio de Giuseppe where Tenax, AGS, and or Nath identified any Ianniello Patent Estate as prior art.

C.          Declare that each Defendant that corresponded with USPTO via  the  US  mail  and  or  wire  services  and  failed  to  disclose information from Ianniello Patent Estate that a reasonable patent examiner would believe was material to the examination breached their

duty of candor to USPTO.

D.   Declare that utilizing the US mail and wire to send USPTO false declarations and oaths that all inventors are not properly joined and all material information known to the patent applicant was disclosed is an act of mail and/or wire fraud.

E. Declare that utilizing the US mail and wire to send USPTO false declarations and oaths for the purpose of denying Plaintiff property rights is an act of mail and/or wire fraud.

E.   Declare that each Defendant that utilized the US mail and wire to apply for a Mario Beretta, Cesare Beretta, Pier Luigi Maggioni, and Giulio de Giuseppe named invention and intentionally failed to cite material and relevant Ianniello prior art committed mail and/or wire fraud.

F.   Rule that each Defendant that violated USPTO law while utilizing the US mail by representing to USPTO that patents were "unintentionally abandoned" when patent applications were "intentionally abandoned" committed mail and wire fraud.

G. Order each Defendant that committed US mail and wire fraud to pay the Plaintiff the maximum fine allowed under mail and wire fraud statutes for each occurrence.

D.   Enter judgment in favor of Ianniello and against Beretta, de Giuseppe, Tenax, Nath and Zelios jointly and severally, for either:

1.   The value of Plaintiff's AGS membership interest as of December 2004 as determined by an expert;

2.   The value Plaintiff would have derived from a reasonable royalty as determined by an expert; or,

24

3. The lost profits as determined by an expert that Defendants were unjustly enriched by the sales of Plaintiff inventions.

4. Plaintiff attorney's fees per the Master Settlement Agreement, plus treble damages and court costs and any such other and further relief as justice may require.

5. The maximum penalty under US mail and wire fraud statutes.

6. Plaintiff attorney's fees plus treble damages and court costs and any such other and further relief as justice may require.

Peter J. Ianniello, pro se
2000 Level Rd
Havre de Grace, Maryland 21078
Peter. J. Ianniello @ gmail.com
410-937-2687

2-24-2010

25

COUNT TWO

Ianniello v. Tenax Corp, Tenax International, AGS, Zelios, Giannoni,

Spruger, Kulzoff, Nath and Syntec:

Violations of Civil RICO Act

(18 U.S.C. §§ 1961-1968 (2006))

Plaintiffs hereby incorporate Paragraphs One through One Hundred and Twenty Three (¶¶ 1-123), inclusively, and further state as follows:

125) Defendants coordinated act and schemes and committed a series of acts inclusive of but not limited to nondisclosures, misinformation, authority and appointment of an "independent third party administrator (TPA)" resulted in Ianniello entering into the 2005 Patent Assignment and related agreements.

126) The "TPA" was to prosecute pending applications within the Ianniello Patent Estate in a manner consistent with USPTO law,

127) Tenax Corp, Tenax International, AGS, Zelios, Nath coordinated Ianniello Patent Estate Applications before USPTO.

128) Tenax Corp, Tenax International, AGS, Zelios, coordinated Applications before USPTO where one of the named inventors included one or more of the following people: Mario Beretta, Cesare Beretta, Pier Luigi Maggioni, and Giulio de Giuseppe.

129) Tenax Corp, Tenax International, AGS, Zelios, Nath coordinated applications as well as responses to the examiners for patents applied for naming Mario Beretta, Cesare Beretta, Pier Luigi Maggioni, and Giulio de Giuseppe as inventors.

130) Tenax Corp, Tenax International, AGS, Zelios, Nath coordinated

what to disclose and what not to disclose to USPTO examiners.

131) Tenax Corp, Tenax International, AGS, Zelios, Nath coordinated
that it was not "reasonable" to disclose the existence of one
Ianniello patent applied for and or issued since 2000 to any USPTO
examiner on any application wherein Mario Beretta, Cesare Beretta,
Pier Luigi Maggioni, and Giulio de Giuseppe patent applications.

132) Not providing Ianniello prior art to an examiner prevented
examiners from making a determination if Ianniello prior art was
material to patentability of any Mario Beretta, Cesare Beretta,
Pier Luigi Maggioni, and Giulio de Giuseppe patent applications.

133) Not providing Ianniello prior art to an examiner prevented
examiners from making a determination if Ianniello was also an
inventor of any Mario Beretta, Cesare Beretta, Pier Luigi Maggioni,
and Giulio de Giuseppe patent applications.

134) Tenax Corp, Tenax International, AGS, Zelios, Nath coordinated
the nondisclosures across intestate and international lines;
nondisclosure is a violation of duties before the USPTO; non-
joinder of inventorship is a violation of duties before USPTO.

135) Tenax Corp, Tenax International, AGS, Zelios, Nath coordinated
nondisclosures across intestate and international lines harmed the
Plaintiff financially, physically, and emotionally.

136) Tenax Corp, Tenax International, AGS, Zelios, Nath coordinated
their efforts and signed affidavits, oaths, and declarations under
penalty of perjury that they complied with USPTO 37CFR 1.56.

137) Giulio de Giuseppe and Cesare Beretta were AGS Managers, Tenax
Corporation Officers, and Cesare Beretta served as a Syntec

Director.

138) USPTO 37CFR 1.56 (commonly referred to as Rule 56), details duty of candor placed upon inventors and any individual substantially involved in the preparation and prosecution of a patent application.

139) Giulio de Giuseppe, Cesare Beretta were substantially involved in directing Nath on patent prosecution.

140) Under Rule 56, Tenax Corp, Tenax International, AGS, Zelios, Nath and its appointed representatives were required to disclose to the USPTO information they were aware of that was material to patentability such as inventorship and all known relevant prior art.

141) Under Rule 56, Syntec and its appointed representatives were required to disclose to the USPTO information they were aware that was material to patentability such as inventorship and all known relevant prior art.

142) Under SEC rules, to the extent that patents were represented as a means to generate past historical performance; or project future historical performance; the Defendants were required to disclose any adverse impact that loss of patent protection could have to banks, financial institutions, and individual investors.

143) Over a period of years, Tenax Corp, Tenax International, AGS, Zelios, Nath coordinated their interstate and international efforts with signed affidavits, oaths and declarations; all under penalty of perjury, stating they complied with USPTO laws inclusive of Rule 56; and at times these oaths and declarations were sent to USPTO

via US mail and wire.

144) Over a period of years, Tenax Corp, Tenax International, AGS, Zelios, Nath coordinated their interstate and international efforts with signed affidavits and non-joined Ianniello on patents pending naming issued before the USPTO.

145) Over a period of years, Tenax Corp, Tenax International, AGS, Zelios, Nath coordinated their interstate and international efforts and utilized the US mail and wire to breach their obligations to USPTO as a means of depriving and defrauding Plaintiff his inventorship rights and benefits as an AGS member.

146) Over a period of years, Tenax Corp, Tenax International, AGS, Zelios, created extortionate litigation schemes to deprive the Plaintiff of value and assets.

147) Third Party Administrator, Nath and Associates were to protect the interests of Plaintiff patents assigned to AGS.

148) Tenax Corp, Tenax International, AGS, Zelios  over a period of years, coordinated and orchestrated through various corporate entities and utilized US mail and wire in a manner to violate USPTO obligations including Rule 56 and defraud the Plaintiff of intangible assets.

149) Tenax Corp, Tenax International, AGS, Zelios coordinated and utilized the US mail and wire services to conspire fraudulently induced the Plaintiff to assign control of the Ianniello Patent Estate.

150) Nath conspired through coordination of Tenax and AGS officers to misrepresent to Plaintiff that it was an "independent" Third Party

Patent Administrator.

151) During the time that Nath and Associates was to act as an "independent" third party administrator for the Ianniello Patent Estate assigned to AGS; Nath was also an affiliate of Saul Ewing.

152) Saul Ewing acts as Tenax Corporation's attorney.

153) Saul Ewing created the December 2005 Master Agreement between Plaintiff, Tenax and AGS.

154) Tenax, AGS, and Nath failed to disclose to Plaintiff that Nath and Associates was an affiliate of Saul Ewing.

155) In accordance with Maryland Ethical Code of Conduct for lawyers; neither Saul Ewing nor any of its affiliates like Nath could not act as independent third party administrators for the Ianniello Patent Estate unless it disclosed to Plaintiff the affiliate relationship and obtained a conflict waiver from Plaintiff.

156) Defendants, for a period of years, through various affiliate corporations, across state and international boundaries; acted in a coordinated manner to utilize the Ianniello Patent Estate and the Plaintiff's intangible assets and in an attempt to control a portion of the geosynthetic drainage industry.

157) Defendants coordinated over a period of years, across multiple continents, through multiple companies their breach of Duty of Candor to USPTO; material misrepresentations, non-disclosures, and non-joinder of Plaintiff's intangible assets.

158) Over several years, Giulio De Giuseppe and Cesare Beretta hired counsel on various continents to apply for patents and failed to disclose to USPTO Ianniello prior art and inventorship and likewise

30

failed to identify for Italian and World Intellectual Property Organization (Switzerland) Ianniello prior art and inventorship and De Giuseppe and Beretta directed these actions under various companies to include Tenax SpA (Italy); Zelios (Liechtenstein); Tenax Corporation (USA); Advanced Geotech Systems (USA).

159) Defendants coordinated their abuse of the Plaintiff and their pattern of nondisclosure, non-joinder, and inequitable conduct before the USPTO has caused Plaintiff to suffer irreparable financial and emotional harm and damage.

160) Defendants seized control of Plaintiffs' intangible assets in December of 2004.

161) Defendant's schemes depleted Plaintiff assets and monetary resources as well as those of Advanced Geotech Systems.

162) Plaintiff's assets controlled by the Defendants as of December 2004 was valued by the Defendants to exceed $1,000,000.

163) Since Dec 2004, Defendants depleted Plaintiffs assets, created no additional assets, positioned AGS so its largest creditor is Tenax, forced settlement negotiations, and repeatedly breached their duty of Candor before the USPTO and repeatedly engaged in inequitable conduct before the United States Patent Office.

164) The Defendants used aggressive litigation techniques to drive up litigation costs and gain control of the Plaintiffs' intangible assets.

165) The Defendants utilized mail and wire to exploit the Plaintiffs and the United States Patent System depriving the plaintiff of millions of dollars of value.

31

166) Defendants obtained patents and applied for patents by utilizing the mail and wire and fraudulently omitted the Plaintiff as an inventor.

167) Defendants utilized wire and mail to fraudulently supply affidavits of inventorship and affidavits that all known prior art known to exist to the defendants was provided to USPTO.

168) The Defendants common tactic is to create a costly litigious environment and force upon Plaintiff agreements for Plaintiff intangible assets and Defendant then applies for the same or similar patent as the Plaintiff and fails to disclose to USPTO the existence of the Plaintiff intangible asset and forces the Plaintiff to incur enormous legal fees.

169) The Defendants then seek tortuous acquiescence of the Plaintiff and seeks to force punitive settlement or further litigation.

170) The Defendants through their numerous multinational companies Tenax (Baltimore, MD), Zelios (Lichtenstein), Tenax International (Lugano, Switzerland), Syntec (Baltimore, MD) engaged in an extortionate multinational pattern of nonjoinder of inventorship, inequitable conduct, and litigation against the Plaintiff.

171) Over years and through many multinational companies, the Defendants committed numerous acts of fraud on the USPTO and against the Plaintiff.

172) Defendant Nath informed the Maryland State Court that it had no duty to disclose the Maryland State Court litigation to USPTO even though aspects of he litigation where matters pending before the USPTO.

173) The Defendants sought to acquire the Plaintiff's intangible assets through intentional nonjoinder, material nondisclosures, and fraudulent inducements to enter into contracts.

174) The Plaintiff seeks RICO to award treble damages, costs of this suit, and reasonable attorney's fees.

175) For nearly twenty years, the Defendants pattern is willful nonjoinder of Plaintiff inventorship; material misrepresentation and nondisclosures before the USPTO; and the common officers perform these fraudulent activities as an enterprise that operates and sells Ianniello Patent Estate and know-how globally under various names such as Tenax, Tenax International, Zelios, and now Syntec.

176) The Defendants conduct to acquire Plaintiffs intangible assets incorporated various multinational corporations; utilized multiple counsel like Nath and Associates (Alexandria, Va); Saul Ewing (Baltimore, Md) and Modiano and Associates (Milan, Italy).

177) The Defendant knowledge of inequitable conduct is extensive as is evidenced by US Supreme Court Tensar vs Tenax.

178) The Defendants conduct has endured for such a period of time that the duration and repetition carries with it an implicit threat of abusing the Plaintiffs and the USPTO in the future.

179) The Defendants through their coordinated behavior have prevented the Plaintiff from realizing economic benefit from his intangible assets.

180) The Defendants related acts against the Plaintiff are interrelated with distinguishing characteristics and are by far not

isolated events.

181) The Defendants benefited from the intangible property assets of the Plaintiffs through the Defendants fraudulent dealing before the USPTO, material nondisclosures; non-joinder of Plaintiff's inventorship; nondisclosures of Plaintiff's prior art, diversion of corporate assets, visa and/or passport fraud; mail fraud, wire fraud, and fraudulent sale of securities.

182) The Defendants acted with false pretenses and defrauded or sought to defraud the Plaintiff of his membership interest and intellectual property and property rights.

183) The Defendants schemed to defraud the Plaintiff of his intangible rights, intangible property rights, and honest services.

184) The Defendants scheme and artifice to defraud the Plaintiff was executed via US mail and wire fraud by resulting in the loss of intangible property rights of the Plaintiff.

185) The Defendants have injured the Plaintiff. The Plaintiff membership interest in AGS in December of 2004 was worth well over a million dollars and in 2009, the Defendants allege the Plaintiffs interest is worth nothing.

186) While in control of the Plaintiffs intangible assets, the Defendants utilized mail, Internet and wire to ultimately generate more than $100 million in global sales from the Ianniello Patent Estate.

187) Defendants utilized mail and wire to induce the Plaintiffs into assigning Plaintiffs intangible assets to Defendants controlled Advanced Geotech Systems.

34

188) Defendants utilized mail and wire to present contracts to Plaintiffs that contractually committed to Plaintiffs that a "Third Party Administrator" would administer the Plaintiffs intangible assets.

189) Defendants filed via the US mail and wire systems patent applications, affidavits, responses, and other filings related to the Plaintiffs intangible assets wherein Defendants committed misrepresentations, non-joinder of inventorship, material nondisclosures; false affidavits.

190) Defendants filed via the US mail and wire patent applications, affidavits, responses, and other filings to deny Plaintiff intangible asset rights.

191) Defendants coordinated inequitable conduct and pattern of failing to disclose to USPTO Plaintiffs intangible assets; prior art; inventorship, and ongoing legal disputes between Defendants and Plaintiff violates RICO statutes.

192) Defendants utilized the mail and wire services while engaging in their scheme in to defraud Plaintiffs of intangible property rights.

193) The Pattern of racketeering activity between Tenax, Zelios, and Tenax International and their use of mail and wire to defraud Plaintiff of his intangible assets occurred over a 17-year period.

194) The pattern of mail and wire fraud by the Defendants did not stop at USPTO but continued into litigation misconduct in Maryland District Court when Nath and Associates misrepresented to the Maryland State Court their USPTO duties.

195) The application of civil RICO against the Defendants applies, as this multinational racketeering scheme to defraud Plaintiff of his intangible assets is a multinational and multi-state enterprise and an extreme case that combines the Defendants fraudulent filings with extortionate litigation practices against the Plaintiffs.

196) The Defendants in part through use of the mail and wire have abused the patent system and converted the Plaintiff's intangible assets to their own benefit.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court:

A.          Declare that Defendants utilized US mail and wire to file applications where Mario Beretta, Cesare Beretta, Pier Luigi Maggioni, and Giulio de Giuseppe are listed as inventors.

B.          Declare that Defendants acted as an enterprise and utilized US mail and wire to send oaths and declarations to USPTO certifying that the Defendants complied with all USPTO duty of candor requirements.

C.  Declare that a reasonable USPTO examiner would have deemed patents and patent applications wherein Ianniello is named inventor as material prior art to patents and patent applications applied for listing Mario Beretta, Cesare Beretta, Pier Luigi Maggioni, and Giulio de Giuseppe as a named inventor.

 and selecting materials that a reasonable examiner would believe constituted material prior art for a reasonable examiner.

C.  Declare that Defendants acting as an enterprise utilized the US mail and wire as well as USPTO and acted as an enterprise to non-disclose Ianniello patents and patent applications so as to deny Ianniello property rights.

D.          Declare that Defendants acted as an enterprise utilized the US mail and or wire services in a manner that breached their duty of candor to USPTO by non-joining Plaintiff.

E.  Declare that Defendants acting as an enterprise that utilized the US mail and Wire to submit oaths and declarations certifying that they complied with USPTO duties of candor for the purpose of defrauding Ianniello his property rights violated RICO statutes.

F.   Declare a mandatory dismissal in favor of the Plaintiff in accordance with RICO statutes.

G.        Award Plaintiff the maximum amount allowable under RICO statutes.

H.   Award Plaintiff attorney's fees plus treble damages and court costs and any such other and further relief as justice may require.

Peter J. Ianniello, pro se<br>
2000 Level Rd<br>
Havre de Grace, Maryland 21078<br>
Peter. J. Ianniello @ gmail.com<br>
410-937-2687

2-24-2010

## COUNT THREE

**Ianniello v. Nath, Tenax and AGS: Negligence and Inequitable Conduct**

Plaintiffs hereby incorporate Paragraphs One through One-Hundred and Ninety Five (¶¶ 1-195), inclusively, and further state as follows:

195. Defendants were obligated to prosecute patent application for the benefit of the Plaintiff as an inventor and member of AGS.

196. Plaintiff provided Defendants written specifications as well as Exhibit 8, "Evidence of certain improvements" that included photographs.

197. Defendants where obligated to deal candidly and in good faith at all times with the USPTO and Plaintiff.

198. Defendants were obligated to disclose prior art and other information including what a reasonable Examiner would want to know when considering new applications.

199. Plaintiff's prior art was "material" information that was unreasonably withheld from USPTO examiners by the Defendants when they sought to prosecute new applications they filed that failed to name Plaintiff as an inventor.

200. The Defendants duty of candor and good faith to the United States Patent and Trademark Office extended to the inventor and others associated with the filing and prosecution of the patents.

201. Over a period of several years, inclusive of several patents and applications, Defendant Tenax has engaged in a protracted pattern of breaching duty of disclosure to USPTO and engaged in a pattern

of non-joinder of Plaintiff of his inventions, then forcing

Plaintiff into extortionate litigation tactics for the purpose of

converting Plaintiffs patents and intangible assets for the benefit

of Tenax.

202. US Pat No 5255998, "Multiple Layer Net Structure for fluid

drainage particularly for geotechnical use" was applied for at

USPTO on November 6, 1992 and issued on Oct 26, 1993; despite

repeated assurances, Tenax never corrected its non-joinder of

Plaintiff Ianniello inventorship.

203. US Pat No. 5,891,549 " Sheet Like structure with surface

protrusions for providing grip enhancing draining elements and the

like" was filed for at USPTO on September 24, 1997 and issued on

April 6, 1999, and despite repeat assurances Defendant Tenax never

corrected its non-joinder of Ianniello as inventor.

204. US PAT NO 6972269, Net Like Structure particularly for

geotechnical use was applied for on March 13, 2000, and issued on

December 6, 2005 and despite repeat assurances Tenax never

corrected its non-joinder of Ianniello as inventor.

205. In December 2005, Defendant Tenax and AGS entered into a Patent

Assignment, License, Dividend, and Royalty Distribution Agreement.

206. Throughout the term of the contract Defendants Tenax, AGS, and

Nath engaged in a series of coordinated schemes to deprive

Plaintiff of his intangible assets and convert to entities

controlled by Defendant Tenax.

207. Plaintiff patent applications prosecuted by Defendants were abandoned as a result of Defendants failure to respond to USPTO within specified deadlines.

208. USSN 10/366,691, "High Friction Scrims, Geonets, Laminates and Methods for Using and Making Them," names Peter J. Ianniello and Giovanni Capra as inventors and is assigned to Advanced Geotech Systems, LLC.

209. Defendants Nath, Tenax, and AGS did not assist the United States Patent and Trademark Office in uncovering material information, even when they knew that information prior to the USPTO initiation of exam.

210. Defendants Nath, Tenax, and AGS made material misrepresentations and did not satisfy their duty of candor and good faith to the USPTO when filing a petition to revive this patent application after abandonment.

211. US Patent Application Serial No. 10/366,691, names Peter J. Ianniello and Giovanni Capra as inventors and is assigned to Advanced Geotech Systems LLC, was filed at USPTO on February 14, 2003. This application is hereafter referred to as "Ianniello '691"

212. The United States Patent and Trademark Office mailed an Office Action for the '691 to Defendants on March 18, 2005.

213. Defendants did not file a Reply to this Office Action within the six-month period starting from the date (March 18, 2005) on which the Office Action was mailed.

214. Consequently, USPTO mailed to Defendants a Notice of Abandonment for this patent application on September 27, 2005, due to

41

"Applicant's failure to timely file a proper reply to the Office
letter mailed on 18 March

215. 2005."

216. Plaintiff Ianniello corresponded with a variety of email messages
with Advanced Geotech Systems LLC (AGS), including Cesare Beretta
(President of AGS and Chairman of Tenax Corporation) and Giulio De
Giuseppe.

217. AGS and Tenax were well aware of the abandonment of this
application from the time it went abandoned up to the date, nearly
a full year later (i.e., on September 6, 2006) when a petition to
revive for unintentional

    a. Abandonment was filed.

218. On September 6, 2006, Applicants' attorney, Gary M. Nath of Nath
& Associates, filed a petition to revive the application, wherein
Nath asserted the following: "The entire delay in providing this
response was unintentional, from the mailing of the Office Action
until the filing of this petition." The time span referenced by
this language covers the date range of March 18, 2005 (the date of
the Office Action) to September 6, 2006.

219. Defendants failed to respond or revive for nearly one and a half
years and then Nath informed the failure over this entire time was
"unintentional."

220. Defendants breached their duty of candor before the USPTO.

221. On February 22, 2006 Defendant Tenax secretly applied
MI2006A000320 that failed to disclose to the Italian patent office
the Ianniello '691; despite the fact that drawings utilized in the

Italian patent appear to be have taken from photographs belonging to Plaintiff Ianniello that his attorney, Piper DLA, Anthony Rosso provided to Saul Ewing's Mr. Eric Orklinski on November 25, 2006.

222.   The Defendant Tenax applied for Italian MI2006A000320 at USPTO on July 14, 2008 as US Pat No 12/087/731 "Sheet Like Element Such as Net Particularly for Geotechnical Applications".

223. Defendants Tenax, Nath, and AGS failed to disclose the existence of the Ianniello '691 to the prosecuting examiner of the '731 and failed to disclose to the examiner of the '731 the existence of the '691 and nonjoined Plaintiff when they filed the '731.

224.   Attorney Nath asserted to USPTO "unintentionality of the abandonment" of the '691 when Defendants Tenax and AGS had knowledge of the abandonment for more than a year.

225. Tenax, AGS and Nath breached their duty of candor by never notifying USPTO about the various communications regarding the abandonment and the Maryland State Court action.

226. Defendants knowingly and intentionally breached the duty to disclose material information relating to their longstanding knowledge of the abandonment.

227. In this case, Defendants misrepresentation of the '691 is critical as it is the material defining factor as to whether this patent application could be revived and furthermore their nondisclosure of the Italian MI2006A000320 was a material omission.

228. Defendants had knowledge that the application was abandoned and took no prior action to revive.

43

229. Additionally, Defendants breached duty of candor before USPTO as neither Tenax, AGS or Nath while prosecuting the Ianniello '691 application never informed the USPTO about US Patent Application Serial No. 11/167,561 (published as US 2007/0183852 A1, titled, "High Friction Geo•Textiles for Increasing the Stability of Landfill Drainage Layers and Other High Friction Angle Installations, and Related Methods," assigned to Tenax International and naming Cesare Beretta as inventor, hereafter referred to as "Beretta '561").

230. The Defendants nondisclosure of the Ianniello '691 application was a material omission when they sought prosecution of the Beretta '561 application.

231. '561. Accordingly, most of the claims of Beretta '561 were rejected by the US Examiner as being anticipated by Ianniello '691, and Tenax allowed the Beretta '561 application to go abandoned.

232. Similarly, Tenax and Gary M. Nath filed an international patent application via the Patent Cooperation Treaty (application No. PCT/US2007/0013097, published as WO/2008/150257 and again naming Cesare Beretta as inventor) that appears to be identical to the Beretta '561 US application and likewise includes text from Ianniello '691.

233. Against this Beretta PCT application, the international examiner likewise found and cited the Ianniello '691 application as a relevant reference defeating patentability some of the claims in combination with other references.

44

234. Defendant Nath prosecuted both the Ianniello '691 application and the Beretta '561 application.

235.  Because Defendant Nath was prosecuting two patent applications with great overlap of subject matter, there was a duty to disclose to the examiner in each of these US applications the existence, status and any rulings and citations in the other application because each examiner would likely find such information relevant [see, e.g., McKesson Information Solutions, Inc. v. Bridge Medical, Inc., 487 F.3d 897 (Fed. Cir. 2007) and Gemveto Jewelry Co. v. Lambert Bros., Inc., 542 F. Supp. 933 (S.D.N.Y. 1982)],

236. Defendants Tenax, AGS, and Nath breached their duty of candor to USPTO and failed to inform the USPTO examiner in each case of the other applications and developments therein.

237. Defendant Nath, Tenax, and AGS conduct is highly material as they possessed and controlled intimate knowledge of both applications and all of the relevant relationships between the parties.

238. Defendant Nath was to act as an independent "Third Party Administrator" for prosecuting patent applications under a December 2005 Agreement between the parties).

239. Defendants intended to deceive USPTO when they failed to openly disclose to USPTO any details of the Beretta '561 application (including the rejections made and the determination of inventorship) to the examiner in the Ianniello '691 application.

202. Over many years, and on numerous patents, Defendant Tenax has intentionally non-joined Plaintiff Ianniello with deceptive intent.

203. Defendants did not seek to avoid conflicts of interest; rather
     they created conflicts of interests.

204. Defendant Nath under the PTO Rules, 37 C.F.R. § 1.56, had a duty
     to disclose all "prior art" in the applicant's field. When Nath
     considered the applications initially, Nath was under ABA Rule 1.6
     to protect the information contained in each application as
     confidential. In one case, while recognizing the law firm's
     dilemma, the court held that the failure to disclose the
     application of one client in the application of the other was
     "inequitable conduct" that rendered the issued patent invalid and
     unenforceable. Molins PLC v. Textron, Inc., 48 F.3d 1172 (Fed. Cir.
     1995)."

205. Defendant Nath breached their duties before USPTO and did not
     ever act as an independent third party administrator.

206. Defendant Nath, representing itself as an independent third
     party" was obligated to prosecute while still satisfying the duty
     of disclosure.

207. Defendants Nath, Tenax, and AGS have "unclean hands of Nath".

208. Under an earlier Federal Circuit decision, a court may decide a
     claim for attorneys' fees under 35 U.S.C. § 285 after a dismissal
     with prejudice [Tenax Corp. v. Tensar Corp., 22 U.S.P.Q.2d 1264,
     1267 (D. Md. 1991), wherein attorneys fees were assessed against
     this same Tenax Corporation after they were found guilty of
     inequitable conduct in an earlier patent infringement case].

209. Defendant Tenax Corporation was aware of the rules and
     implications

46

210. of inequitable conduct based on this earlier case; and as such knowledge and intent of the wrongdoing on behalf of Tenax Corporation, whose officers were engaged in the discussions and actions surrounding the abandonment of Ianniello '691 is deduced.

211. Defendants Nath, Tenax, and AGS, while prosecuting US Patent Application No. 10/366,692 did not assist the United States Patent and Trademark Office in uncovering material information, even when that information was known to them prior to the initiation of the examination of a US patent application by the Examiner and (b) made an apparent misrepresentation and did not satisfy the duty of candor and good faith to the United States Patent and Trademark Office when filing a petition to revive this patent application after abandonment.

212. US Pat No. 10/366,692 (published as US 2003/0224143 A1, titled "Fuzzy Woven Layers, Geocomposite Laminates Incorporating Them, and Related Matters," with inventors Peter J. Ianniello and Giovanni Capra, (hereafter referred to as "Ianniello '692") was filed with the United States Patent and Trademark Office on February 14, 2003— i.e., the same day that USSN 10/366,691 was filed.

213. The United States Patent and Trademark Office mailed an Office Action to Defendants Tenax and AGS on August 11, 2005 and noted the statutory six-month deadline for filing a Reply.

214. Defendants Tenax and AGS did not reply this Office within the six-month period from the mailing date of August 11, 2005.

215. Consequently, the United States Patent and Trademark Office mailed to Attorney a Notice of Abandonment of this patent

47

application on April 13, 2006, due to "Applicant's failure to
timely file a proper reply to the Office letter mailed on 11 August
2005."

216. Three months passed after abandonment of the Ianniello '692
application before Applicants' attorney, Gary M. Nath, filed a
petition to revive this application on July 12, 2006. The United
States Patent and Trademark Office granted the petition, and the
application was accordingly revived.

217. On July 18, 2007, the United States Patent and Trademark Office
issued another Office Action. Applicants filed a Notice of Appeal
on January 18, 2008 but then failed to file the required Appeal
Brief within the statutory six-month deadline for response.
Consequently, the

   Ianniello '692 application went abandoned for the second time on
   July 18, 2008; and the United States Patent and Trademark Office
   mailed a second Notice of Abandonment to Nath confirming the
   latest abandonment on October 6, 2008.

218. No action was taken by Nath or by AGS to revive this application
for almost 11 months after this second abandonment (and nearly a
year after this lawsuit was initiated in July 2008, wherein the
abandonment of the Ianniello '692 application was contested), when
finally on June 12, 2009, the Nath Law Group finally filed a
petition to revive this application.

219. As required, the Nath firm certified under oath that "The entire
delay in filing the required reply from the due date for the

required reply until the filing of a grantable petition under 37
CFR 1.137(b) was "unintentional."

220. Defendants for a second time coordinated their efforts and
conceived and represented to USPTO a second situation where this
application could remain "unintentionally" abandoned for such a
long time.

221. Over the years, the Defendants have a pattern of non-joinder of
Plaintiff Ianniello inventorship; non-disclosure of Plaintiff
Ianniello prior art; material misinformation; and a pattern of
knowingly submitting false oaths and declarations to USPTO.

222. In view of the Defendants pattern of conduct as stated throughout
this complaint, and in view of the stakes raised by this
litigation, the earlier unintentionality of the abandonment of the
Ianniello '692 application (which is a material issue with respect
to the ultimate patentability of this application) and the
consequent propriety of the revival of this application is cast
highly in doubt.

223. Absent a compelling justification for the repeated non-joinder of
Plaintiff Ianniello's inventorship; justification for repeated
pattern of abandoning Plaintiff applications while prosecuting
similar Defendant applications in other nations; repeated
nondisclosure of Plaintiff prior art to USPTO as well as
international patent authorities in Italy as well as the World
Intellectual Property Organization; this suggest a pattern of
willful and intentional misconduct before the USPTO to deprive
Plaintiff Ianniello of his intangible assets that literally has no

49

legal or national boundary as far as Defendant Tenax and AGS are concerned.

224. The delay in filing the second petition to revive the '692 strongly suggest the statement of unintentionality is again another particular instance of a material misrepresentation, and from the above circumstances, another example of an intent to deceive USPTO and Plaintiff.

WHEREFORE, Ianniello respectfully requests that this Honorable Court:

A     Declare that Defendant coordinated as an enterprise series of non-disclosures upon the USPTO that a reasonable examiner would have considered material to patentability.

B.    Declare that the Defendants coordinated as enterprise responses to USPTO related to the "intentional" and or "unintentional" abandonment" of '692 patents and their non-disclosures at time of petition to revive were material to the examiner.

C.    Declare that Defendants coordinated as an enterprise series of acts against the USPTO over a period of years.

D. Declare that Defendants coordinated as an enterprise series of acts against the USPTO over a period of
to obtain the property of the Plaintiff.

E. Enter judgment in favor of Ianniello and against Beretta, de Giuseppe, Tenax, Nath and Zelios jointly and severally, for either:

    1. the value of Plaintiff's AGS membership interest as of December 2004 as reported in the 2004 Legg Mason Report as well as by Beretta and Capra;

    2. The value Plaintiff would have derived from a reasonable royalty as determined by an expert; or,

    3. The Plaintiff's the lost profits as determined by an expert that Defendants were unjustly enriched by the sales of Plaintiff inventions.

    4. The maximum penalty under RICO statutes to the Plaintiff.

G.          Award Ianniello attorney's fees per the Master Settlement Agreement, plus treble damages and court costs and any such

other and further relief as justice may require.

Peter J. Ianniello, pro se
2000 Level Rd
Havre de Grace, Maryland 21078
Peter. J. Ianniello @ gmail.com
410-937-2687

2. 24 2010

## COUNT FOUR

### Ianniello v. Tenax, AGS, Zelios, and Syntec: Conversion

Plaintiffs hereby incorporate Paragraphs One through Two Hundred and Twenty Four (¶¶ 1-224), inclusively, and further state as follows:

225) Tenax reported its sales for AGS that utilized the Ianniello Patent Estate as the "Tenax Triplanar Division".

226) The Tenax Triplanar Division marketed the Ianniello Patent Estate utilizing

227) AGS' web sites including Landfilldesign.com and Roadwaydesign.com.

228) The Tenax Triplanar Division sold more than $100,000,000 of Ianniello Patent Estate products.

229) On September 1, 2003, Contech Construction Products, an Ohio Corporation, entered into a distribution agreement with Tenax wherein it obtained certain rights to market and sell patents within the Ianniello Patent Estate

230) Contech Construction products paid a $750,000 promotional service fee for each year that it maintained the rights to market the Ianniello patent portfolio for a five-year term.

231) In 2003, Tenax commissioned Legg Mason to perform due diligence, and establish a value for AGS/Tenax Triplanar Division.

232) In 2004 Legg Mason established a value and marketed AGS/Tenax Triplanar Division to industry competitors and private equity firms for more than $20,000,000.00.

233) Beretta reported to AGS' members that the Tenax Triplanar Division had a value in excess of $20,000,000.00.

234) Tenax Chief Operating Officer Giovanni Capra reported that the Triplanar Division had a value of in excess of $20,000,000.00.

235) The patents that Legg Mason, Beretta, and Giovanni Capra included in the AGS/Tenax Triplanar Division valuation - patents in which Ianniello is an inventor - eventually came under the ownership of Tenax/AGS/Beretta per the Master Settlement Agreement.

236) Ianniello ceased to be an employee of Tenax in December of 2004. However, Ianniello retained his membership interest in AGS.

237) Following the execution of the Master Settlement Agreement, Beretta and de Giuseppe engaged in a course of conduct to diminish the value of the patent portfolio solely for the benefit of themselves and Tenax and to the detriment of Ianniello as an inventor and as a member of AGS.

238) AGS' IRS Tax Returns from 2006 to 2008 indicated no value for AGS' patent Portfolio.

239) Beretta advised AGS members that AGS was insolvent in or about February of 2009.

240) In August of 2009, Aigen Zhao ("Zhao"), an employee of Tenax, and AGS' Tax
Matter Partner, requested that Ianniello consent and agree to the result of an IRS audit.

241) Zhao refused to proffer proof of the identity of Zelios' members prior to the Plaintiffs agreeing to sign off on the IRS audit.

242) In August of 2009, Ianniello requested information regarding

Zelios in the context of the IRS audit.

243) On September 21, 2009, an IRS AGS 'closure' meeting was held at Truman Parkway in Annapolis, Maryland.

244) Attending the meeting were Zhao, IRS Agent Ms. Carla Johnson, Steve Kuffman, who is the CPA representing AGS, Ianniello. Zhao was present in his capacity as the AGS' Tax Matters Partner.

245) At approximately 10:05 am, Zhao stated to the attendees; "I talked with the
    Majority Member [of Zelios] and they are in agreement with the examination changes".

246) Ianniello immediately asked Zhao "Aigen, you just stated that you talked with the majority member; who is the majority member, specifically, whom did you speak with?" Zhao responded, "Cesare Beretta."

247) Ianniello then specifically stated, "Aigen, so what you are telling us is that Cesare Beretta is the majority member [of Zelios A.G. Balzers]?"

248) Zhao responded, "That is what I assume".

249) Based on Zhao's response to Ianniello, Beretta is the person who is responsible for directing AGS' 56% majority member Zelios in all regards.

250) In the past, de Giuseppe has acted as a proxy for Zelios when voting on AGS matters.

251) Tenax and AGS' 56% majority member Zelios are one and the same in terms of authority and decision making capacity.

252) Beretta, de Giuseppe, Tenax, and AGS are one and the same in

55

terms of authority and decision making capacity.

253) Because of these inherent conflicts of interest, there is no way to separate the actions of Beretta, de Giuseppe, Tenax, and AGS.

254) Beretta and de Giuseppe, thus, engaged in a course of conduct to convert AGS' patent portfolio for their individual benefit and for the benefit of Tenax to the detriment of Ianniello and the other minority members of AGS.

255) Ianniello has reason to believe that Beretta and de Giuseppe fraudulently induced Ianniello to enter into the Master Settlement Agreement for the sole purpose of converting AGS' patent portfolio; membership interest; and other intangible assets so as to avoid dealing with Ianniello directly as the inventor of said patent portfolio.

256) On October 1, 2009 Syntec Corporation began selling Ianniello Patent Estate; and now benefits from the AGS intangible assets.

257) According to SEC filings, Syntec's Director is Cesare Beretta; its President is Giovanni Capra, and Vice President Aigen Zhao.

258) According to information and belief, Syntec operates from the Tenax and Advanced Geotech Systems complex at 4800 East Monument Street and share common employees.

WHEREFORE, Ianniello respectfully requests that this Honorable Court:

A.          Order Tenax, Beretta, and de Giuseppe, to release all patent-related records from December 2004 to the present showing its records of all their patents and patent applications in the United States and worldwide;

B.          Order Tenax to state the trade names for all products sold globally included in the sales of Ianniello Patent Estate or Triplanar.

C.          Order Tenax to release any and all financial records from December 2005 to the present showing its records of all products sold in the United States and worldwide that derive from sales based on Ianniello Patent Estate and the Tenax Triplanar Division;

D.          Enter judgment in favor of Ianniello and against Beretta, de Giuseppe, Tenax, Nath and Zelios jointly and severally, for either:

1. Award the value of Plaintiff's AGS membership interest as of December 2004 as reported in the 2004 Legg Mason Report as well as by Beretta and Capra;

2. Award the value Plaintiff would have derived from a reasonable royalty as determined by an expert; or,

3. Award Plaintiff the lost profits as determined by an expert that Defendants were unjustly enriched by the sales of Plaintiff inventions.

D. Award Plaintiff attorney's fees, plus treble damages and court costs and any such other and further relief as justice may require.

57

Peter J. Ianniello, pro se
2000 Level Rd
Havre de Grace, Maryland 21078
Peter. J. Ianniello @ gmail.com
410-937-2687

2-24-2010

COUNT FIVE

Ianniello v. Tenax, AGS, Zelios, Beretta, de Giuseppe:

Breach of Contract

Plaintiffs hereby incorporate Paragraphs One through Two Hundred and fifty eight(¶¶ 1-258), inclusively, and further state as follows:

261) December 2005 Patent Assignment, License, Release, Royalty, and Dividend Distribution Agreement states:

262) *"WHEREAS, Ianniello has ownership interests in one or more United States and Foreign patents and patent applications;*

263) *WHEREAS, Tenax uses much of the technology claims in the core patents owned by AGS*

264) *WHEREAS, Ianniello is an inventor on all the Patents and is dependent upon access to the patents through the license agreements referenced herein for his future economic benefit;*

265) *Paragraph 1.4 WHEREAS the INVENTORS and Tenax warrant that other than as set forth in this Agreement and the EXHIBITS attached hereto, they have not assigned or attempted to assign any Patent to any Person or entity other than AGS...Except as may be consistent with the licenses referred to in Section 1.7 through 1.10, the inventors and Tenax shall not assign or attempt to assign the Patents to any person or entity other than AGS.*

266) AGS, Tenax, and Cesare Beretta are in breach of 1.4 of this Agreement.

*Paragraph 1.5 states" The inventors and Tenax shall promptly execute all papers necessary in connection with any Patent...including foreign*

counterparts…and also execute separate assignments in connections with such applications".

267) AGS, Tenax, and Cesare Beretta are in breach section of 1.5 of this Agreement

Paragraph 1.6 states; "The Inventors and Tenax hereby sell, assign, and transfer to AGS all improvements to the Patents created or conceived on or before the Effective Date and shall communicate to AGS any facts known to the Inventors and Tenax regarding any improvements created or conceived on or before the Effective Date…Attached as Exhibit 8 is evidence of certain improvements to the Patents created or conceived by Tenax, AGS or their affiliates…"

268) AGS, Tenax, and Cesare Beretta are in breach section of 1.6 of this Agreement

Paragraph 1.15 states "After the effective date, the parties hereto hereby agree that a continuation in part or new patent application may be filed by AGS regarding the "yellow rib high friction geonet' which will list Ianniello and any other inventor at Tenax as a named inventor on the continuation-in-part or new patent application…A photo and any other description of the "yellow rib friction geonet" is set forth on Exhibit 8. Ianniello and any other inventor hereto hereby agree to make an assignment of all right, title, and interests to the continuation in part or new patent application for the "yellow rib geonet: identical to the assignment of rights set forth in Section 1.1upon request of AGS after such continuation-in-part or new patent application is filed with the USPTO. AGS hereto hereby agrees to amend EXHIIT 5 (B)(ii) to add the "yellow rib high friction geonet" to

the list of patent applications licensed there under to Ianniello
after such continuation-in-part is filed with the USPTO".

269) Page 32 states "Exhibit 8; Evidence of Certain Improvements"
Exhibit 8 photograph for "evidence of certain improvements" for the
Ianniello "Patent Application # 20030178122; High Friction scrims,
geonets, laminates and methods for using and making them" are color
photographs and images owned by Ianniello and sent electronically from
Ianniello's counsel Piper DLA's Anthony Rosso on November 25, 2005 to
Saul Ewing's Eric Orlinski.

270). Page 2, Section 3.1 of the License Agreement for US Patent
Application states " *AGS shall appoint an independent third party
administrator (TPA) to administer prosecution and maintenance of the
Patents within 15 Days of the Effective Date of the Agreement. AGS
shall notify Ianniello in writing of its selection of the TPA.*

271) AGS, Tenax, and Cesare Beretta are in breach section of 3.1 of
this Agreement.

272) Cesare Beretta and Giulio de Giuseppe in their roles at Tenax and
AGS represented Nath was the TPA. However, after the Defendants Cesare
Beretta, Giulio de Giuseppe, Tenax, and AGS committed the following
acts:

273) On Feb 22, 2006, Tenax directed Modiano of Milan, Italy (and not
    Nath the purported TPA) to file a new patent application based upon
    "Exhibit 8, Evidence of Certain Improvements for US Pat No.
    20030178122".

274) Defendants utilized US mail, wire, electronic communications to
    breach this agreement and deprive Plaintiffs of intangible asset

property rights for US Pat Application 20030178122; Serial #10/366691 filed February 14, 2003 "High Friction scrims, geonets, laminates, and methods for using and making them" and U.S. Pat. App. Ser. No.: 12/087,731 ('731 application), filed July 14, 2008 entitled "Sheet-Like Element Such As a Net, Particularly For Geotechnical Applications" with named inventor Maggioni.

275) On November 22, 2005 Giulio De Giuseppe, Tenax President and AGS Manager, utilized wire to communicate with Peter Ianniello terms of Master Agreement Paragraph 1.15 and further stated "I need to send them to Italy before signing".

276) On November 25, 2006, Piper DLA attorney, Anthony Rosso sent over wire to Eric Orlinski and Giulio De Giuseppe photos belonging to Peter Ianniello; and these same photos were utilized to produce Master Settlement Exhibit 8 "Evidence of Certain Improvements" for US Patent Application # 20030178122.

277) On February 22, 2006, Tenax filed MI2006A000320 at the Italian patent office with drawings produced from the photographs obtained from the Master Settlement Agreement's Exhibit 8 "Evidence of Certain Improvements" for US Patent Application 20030178122 that identifies Ianniello as the inventor.

278) Although US Patent Application 20030178122 was assigned and accepted by Tenax and AGS via US Mail and wire, the entities Beretta and de Giuseppe controlled; Tenax and its officers never disclosed to the Italian Patent office the existence of US Pat Application 20030178122 as being relevant prior art to the February 22, 2006 filing of the MI2006A000320.

279) On July 14, 2008, the Defendants utilized the US mail and wire to file in the United States of America US Pat No 12/087/731; the Defendants claimed priority to MI2006A000320 filed in Italy on February 22, 2006; but never identified for USPTO US Patent Application 20030178122 filed in the USA on February 14, 2003.

280) On July 14, 2008, Tenax utilized the US mail and wire to certify under penalty of perjury that the Tenax complied with USPTO in accordance with Title 37, Code of Federal Regulations 1.56 and that Tenax fulfilled its duty of candor to USPTO in that they properly identified all inventors, and that they disclosed all relevant prior art.

281) Since July 14, 2008 until January 7, 2010 Tenax and the USPTO corresponded via US mail and wire on at least 40 occasions and the Tenax supplied hundreds of documents via US mail and wire and never disclosed Plaintiffs US Pat Application 20030178122.

282) The Defendants had a "Duty of Candor" under title 37 Federal Regulations 1.56 to identify all inventors and material prior art.

283) The Defendants, over a period of years, sent via US mail and wire, hundreds of documents inclusive of signed declarations and oaths under penalty of perjury but never disclosed Plaintiff's prior art or inventorship.

284) Defendants utilized US mail and wire for the purpose of defrauding Plaintiff of intangible assets.

285) Beretta and De Giuseppe exported Plaintiffs know-how and AGS trade secrets through US mail and wire services to foreign entity they controlled.

286) Tenax utilized US mail and wire to submit patent drawings based upon Exhibit 8 US Pat No 20030178122 "Evidence of certain improvement" and then Tenax utilized US mail and wire to apply for as the US Pat No. 12/087/731 which claims priority to February 22, 2006 filing of the MI2006A000320.

287) Tenax signed declarations and oaths and corresponded with USPTO via US mail and wire and intentionally non-joined Ianniello as an inventor and intentionally failed to disclose US Pat Application 20030178122.

288) March 29, 2006, Nath and Associates Ross Epstein utilized US electronic wire communication to introduce himself to Peter Ianniello as the "Independent Third Party Administrator" of US Pat Application 20030178122 as well as other intangible assets of the Plaintiff.

289) July 2006 Nath and Associates utilized US mail and wire and advised Piper DLA's Anthony Rosso that it possessed the Master Agreement and resolved all representation conflicts that existed.
Nath and Associates utilized US mail and wire through out its prosecution of US Pat Application 20030178122 and represented to USPTO that at all times it performed its duties under Rule 56 to disclose all material prior art and inventors.

290) Nath and Associates had in its possession photographs of US Pat Application 20030178122 as a resulting of possessing the Master Agreement.

291). Over a period of years, Nath and Associates corresponded with USPTO on more than 50 occasions and sent them via US mail and wire

64

hundreds of pages; but Nath and Associates never provided drawings and/or the photographs of US Pat Application 20030178122; and never disclosed to USPTO the existence of the Tenax SpA filing of US Pat No. 12/087/731.

292) Page 5 Paragraph 6 WARRANTS AND INDEMNIFICATIONS states:

*Representation and Warranties of AGS; AGS represents and warrants to Ianniello that AGS has the full and unencumbered right, power, and authority to enter into this agreement…*

*BREACH AND REMEDIES: In the event of a breach of this Agreement the non breaching party will suffer irreparable harm and will be entitled to specific performance and/or permanent injunctive relief to enforce this Agreement without the need to post bond and that such relief shall be in addition to and not in lieu of any monetary damages or other relief a court of competent jurisdiction, whether at law or equity may award.*

*GOVERNING LAWS AND JURISDICTION. This Agreement shall be deemed to be a contract made in and governed by the State of Maryland….*
*The prevailing party in any action or proceedings resolved by the courts as provided herein shall be entitled to prompt reimbursement from the losing party of all the prevailing party's out of pocket costs and expenses including legal fees.*

293). AGS, Tenax, and Cesare Beretta are in breach section of the WARRANTS of this Agreement and Plaintiff has suffered irreparable harm.

294). Upon information and belief, Nath had existence of Modiano and Associates.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court:

A.     Declare that Tenax, AGS, Beretta and de Giuseppe breached.

B.     Order AGS, Tenax, Beretta, Zelios, and de Giuseppe, to release any and all patent-related records and correspondence with Modiano and Associates and Nath and Associates related to the US Pat Application 20030178122; and filing of MI2006A000320 and US Pat No. 12/087/731.

B.     Order Tenax, AGS, Zelios, Beretta, de Giuseppe to release any and all internal communications between Giulio de Giuseppe, Cesare Beretta, Giovanni Capra, Tenax, Syntec, and AGS related to any the Ianniello Patent Estate or other applications where Beretta, Maggioni, de Giuseppe is a claimed inventor.

C.     Order Tenax, AGS, and Syntec to release any and all contracts, purchase orders, license agreements, or representations to customers, banks, financial institutions, financial projections, they made from December 2005 to the present showing its records of all products sold in the United States and worldwide that derive from sales based on the Ianniello Patent Estate and Tenax Triplanar Division;

D.     Enter judgment in favor of Ianniello and against Beretta, de Giuseppe, Tenax, Nath and Zelios jointly and severally, for either:

     1. the value of Plaintiff's AGS membership interest as of December 2004 as determined by an expert.

     2. the value Plaintiff would have derived from a reasonable royalty as determined by an expert; or,

     3. the lost profits as determined by an expert those Defendants were unjustly enriched by the sales of Plaintiff inventions.

     4. Award Ianniello attorney's fees plus treble damages and court

costs and any such other and further relief as justice may require.

Peter J. Ianniello, pro se
2000 Level Rd
Havre de Grace, Maryland 21078
Peter. J. Ianniello @ gmail.com
410-937-2687

2-21-2010

67

## COUNT SIX

### Ianniello v. Tenax, AGS, Zelios, Giannoni, Spruger, Kulzoff, Nath, Beretta, de Giuseppe and Syntec: Constructive Fraud

Plaintiffs hereby incorporate Paragraphs One through Two Hundred and Ninety Four (¶¶ 1-294), inclusively, and further state as follows:

295. Over a period of years, on numerous matters related Plaintiff's intangible assets; Defendants, Tenax, AGS, Beretta, De Giuseppe committed constructive fraud by breach of their duties to Plaintiff and gained an advantage for Tenax, AGS, de Giuseppe and Beretta at the expense of Plaintiffs intangible assets value by intentionally misleading Plaintiff in part by committing acts and omissions.

296. The Defendants false oaths and declarations to the USPTO over a period of years on many occasions that failed to disclose material facts to USPTO examiners related to patentability of Plaintiff inventions.

297. The Defendants conspired to submit false oaths and declarations to the USPTO over a period of years on many occasions that failed to disclose material facts to USPTO examiners related to patentability of Defendant patent applications. In 2004 Legg Mason established a value and marketed AGS/Tenax Triplanar Division to industry competitors and private equity firms for more than $20,000,000.00.

298. Beretta reported to AGS' members that the Tenax Triplanar Division had a value in excess of $20,000,000.00.Tenax Chief Operating Officer Giovanni Capra reported that the Triplanar Division had a value of in excess of $20,000,000.00.

299. The patents that Legg Mason, Beretta, and Giovanni Capra included in the AGS/Tenax Triplanar Division valuation - patents in which Ianniello is an inventor - eventually came under the ownership of Tenax/AGS/Beretta per the Master Settlement Agreement.

300. The Defendants conspired to create a new entity, Syntec that benefits from use of Plaintiffs intangible assets.

301. The Defendants constructive fraud reduced the value of Plaintiffs membership interest of over $1,000,000 in December of 2004 to what Defendants now represent is worth nothing.

302. The same Defendants filed Syntec SEC documents in 2009 and raised in excess of $1,000,000 for, the company whose Directors is Cesare Beretta. Syntec operates from the Tenax/ AGS complex on 4800 East Monument Street in Baltimore, Maryland and benefits from AGS and Plaintiff intangible assets.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court:

A.   Declare that defendants committed constructive fraud against Plaintiff.

B.   Enter judgment in favor of Ianniello and against Beretta, de Giuseppe, Tenax, Nath and Zelios jointly and severally, for either:

1.   The value of Plaintiff's AGS membership interest as of December 2004 as reported in the 2004 Legg Mason Report as well as by Beretta and Capra;

2.   The value Plaintiff would have derived from a reasonable royalty as determined by an expert; or,

3. The lost profits as determined by an expert that Defendants were unjustly enriched by the sales of Plaintiff inventions.

4.   Award Ianniello attorney's fees plus treble damages and court costs and any such other and further relief as justice may require.

Peter J. Ianniello, pro se
2000 Level Rd
Havre de Grace, Maryland 21078
Peter. J. Ianniello @ gmail.com
410-937-2687

70

## COUNT SEVEN

### Ianniello v. Tenax, AGS, Zelios, Gannon, Spruger, Kulzoff, Beretta, Nath and Syntec:

### Civil Conspiracy

Plaintiffs hereby incorporate Paragraphs One through Two Hundred and Sixty Three (¶¶ 1-302), inclusively, and further state as follows:

303. The Defendants conspired to deprive Plaintiff of his intangible assets through the formation and operation of a conspiracy that resulted in damage to plaintiff from Defendants.

304. Defendant's acts were performed in furtherance of a common design to deprive Plaintiff from his intangible assets and conspired to submit false oaths and declarations to the USPTO over a period of years on many occasions that failed to disclose material facts to USPTO examiners related to patentability of Plaintiff inventions.

305. Defendants acts were performed in furtherance of a common design to deprive Plaintiff from his intangible assets and conspired to submit false oaths and declarations to the USPTO over a period of years on many occasions that favorably positioned Defendant patent applications by not disclosing Plaintiff as an inventor or Plaintiff material prior art

306. In 2004 Legg Mason established a value and marketed AGS/Tenax Triplanar Division to industry competitors and private equity firms

71

for more than $20,000,000.00.

307.  Beretta reported to AGS' members that the Tenax Triplanar
     Division had a value in excess of $20,000,000.00.

308. Tenax Chief Operating Officer Giovanni Capra reported that the
     Triplanar Division had a value of in excess of $20,000,000.00.

309. The patents that Legg Mason, Beretta, and Giovanni Capra included
     in the AGS/Tenax Triplanar Division valuation - patents in which
     Ianniello is an inventor - eventually came under the ownership of
     Tenax/AGS/Beretta per the Master Settlement Agreement.

310.  In 2009, Defendants conspired to create a new entity, Syntec
     that benefits from use of Plaintiffs intangible assets.

311. According to SEC documents, in 2009 Syntec raised over $1,000,000
     and upon information and belief, utilized Plaintiff and AGS
     intangible assets to present to banks, and investors.

312.  In such an action the major significance and consequence of the
     conspiracy lies in the fact defendants now allege to Plaintiff that
     intangible assets are now worth nothing.

313.  Each Defendant conspired in these acts that results in the
     defendants proposed valuation of Plaintiffs intangible property;
     their conduct with Plaintiff intangible assets was wrongful.

314.  The Defendants shared a common plan or design in its

perpetration and resulted in damage to Plaintiff.

315.   The Defendants conspired to harm Plaintiff and the evidence of their conspiracy in part is within each patent application Plaintiff was non-joined or the Defendants did not disclose material information related to patentability to USPTO examiners.

316.   It is these coordinated acts done and breaches of duty of candor before USPTO and not the conspiracy against the Plaintiff to the detriment of the Plaintiff and to the benefit of the Defendants.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court:

A.          Order Defendants to release to Plaintiff all communications sent via US mail and/or wire wherein the Defendants Tenax, AGS, Syntec, Nath and their appointed representatives declared, under penalty of perjury, that all material information; known prior art, and inventors were properly disclosed to USPTO on patents that Mario Beretta, Cesare Beretta, Pier Luigi Maggioni, and Giulio de Giuseppe are identified as inventors.

B.  Order Defendants to release to Plaintiff any and all responses sent via US mail and/or wire and communications that occurred between Tenax, AGS, Nath, Syntec, wherein their appointed representatives communicated with USPTO on the subject of inventorship and information a reasonable examiner would consider to be material for the prosecution of patents or patent applications where Mario Beretta, Cesare Beretta, Pier Luigi Maggioni, and Giulio de Giuseppe are identified as inventors.

D.  Order Tenax, AGS, and Nath to release each document sent via US mail and/or wire where the in any patent or patent application applied for by Mario Beretta, Cesare Beretta, Pier Luigi Maggioni, and Giulio de Giuseppe they identified any Ianniello Patent Estate as prior art.

C.          Declare that each Defendant that utilized the US mail and or wire services in a manner that breached their duty of candor to USPTO by non-joining Plaintiff as an inventor committed mail and/or wire fraud.

E.  Declare that each Defendant that utilized the US mail and wire to

74

apply for a Mario Beretta, Cesare Beretta, Pier Luigi Maggioni, and Giulio de Giuseppe named invention and intentionally failed to cite material and relevant Ianniello prior art committed mail and/or wire fraud.

F.    Rule that each Defendant that violated USPTO law while utilizing the US mail by representing to USPTO that patents were "unintentionally abandoned" when patent applications were "intentionally abandoned" committed mail and wire fraud.

 G.   Order each Defendant that committed US mail and wire fraud to pay the Plaintiff the maximum fine allowed under mail and wire fraud statutes for each occurrence.

H.    Enter judgment in favor of Ianniello and against Beretta, de Giuseppe, Tenax, Nath and Zelios jointly and severally, for either:

   1.   The value of Plaintiff's AGS membership interest as of December 2004 as reported in the 2004 Legg Mason Report as well as by Beretta and Capra;

   2.   The value Plaintiff would have derived from a reasonable royalty as determined by an expert; or,

   3.   The lost profits as determined by an expert that Defendants were unjustly enriched by the sales of Plaintiff inventions.

   4.   Award Ianniello attorney's fees plus treble damages and court costs and any such other and further relief as justice may require.

WHEREFORE, Ianniello respectfully requests that this Honorable Court:

A.   Declare that defendants committed constructive fraud against Plaintiff.

B.   Enter judgment in favor of Ianniello and against Beretta, de Giuseppe, Tenax, Nath and Zelios jointly and severally, for either:

1.   The value of Plaintiff's AGS membership interest as of December 2004 as reported in the 2004 Legg Mason Report as well as by Beretta and Capra;

2.   The value Plaintiff would have derived from a reasonable royalty as determined by an expert; or,

3.   The lost profits as determined by an expert that Defendants were unjustly enriched by the sales of Plaintiff inventions.

4.   Award Ianniello attorney's fees plus treble damages and court costs and any such other and further relief as justice may require.

Peter J. Ianniello, pro se
2000 Level Rd
Havre de Grace, Maryland 21078
Peter. J. Ianniello @ gmail.com
410-937-2687

COUNT EIGHT

**Ianniello v. Tenax, AGS and Nath: Beretta, de Giuseppe, Gianonni, Spruger, and Kulzoff**

Intentional Misrepresentation

Plaintiffs hereby incorporate Paragraphs One through Three Hundred and Sixteen (¶¶ 1-316), inclusively, and further state as follows:

317) Cesare Beretta and Giulio de Giuseppe in their roles at Tenax and AGS represented Nath was the third part administrator "TPA". However, after the Defendants Cesare Beretta, Giulio de Giuseppe, Tenax, and AGS committed the following acts:

318) On Feb 22, 2006, Tenax directed Modiano of Milan, Italy (and not Nath the purported TPA) to file a new patent application based upon "Exhibit 8, Evidence of Certain Improvements for US Pat No. 20030178122".

319) Defendants represented they would prosecute US Pat Application 20030178122 Serial #10/366691 filed February 14, 2003 "High Friction scrims, geonets, laminates, and methods for using and making them on behalf of Plaintiff and AGS; instead Tenax filed and U.S. Pat. App. Ser. No.: 12/087,731 ('731 application), filed July 14, 2008 entitled "Sheet-Like Element Such As a Net, Particularly For Geotechnical Applications" with named inventor Maggioni.

320) On November 22, 2005 Giulio De Giuseppe, Tenax President and AGS Manager, to Peter Ianniello terms of Master Agreement Paragraph 1.15 and further stated "I need to send them to Italy before

signing".

321) On November 25, 2006, Piper DLA attorney, Anthony Rosso to Eric Orlinski photos belonging to Plaintiff; and these same photos were utilized to produce Master Settlement Exhibit 8 "Evidence of Certain Improvements" for US Patent Application # 20030178122.

322) On February 22, 2006, Tenax filed MI2006A000320 at the Italian patent office with drawings produced from the photographs obtained from the Master Settlement Agreement's Exhibit 8 "Evidence of Certain Improvements" for US Patent Application 20030178122 that identifies Ianniello as the inventor.

323) Although US Patent Application 20030178122 was assigned and accepted by Tenax and the entities Beretta and de Giuseppe controlled; Tenax and its officers misrepresented and never disclosed to the Italian Patent office the existence of US Pat Application 20030178122 as being relevant prior art to the February 22, 2006 filing of the MI2006A000320.

324) On July 14, 2008, the Defendants file in the United States of America US Pat No 12/087/731; the Defendants claimed priority to MI2006A000320 filed in Italy on February 22, 2006; but misrepresent their lack of knowledge of USPTO US Patent Application 20030178122 filed in the USA on February 14, 2003; an application Nath prosecutes on behalf of the Defendant and Plaintiff.

325) On July 14, 2008, Tenax under penalty of perjury certified that it complied with USPTO in accordance with Title 37, Code of Federal Regulations 1.56 and that Tenax fulfilled its duty of candor to USPTO in that they properly identified all inventors, and that they

78

disclosed all relevant prior art.

326) Since July 14, 2008 until January 7, 2010 Tenax and the USPTO corresponded via US mail and wire on at least 40 occasions and the Tenax supplied hundreds of documents via US mail and wire and never disclosed Plaintiffs US Pat Application 20030178122.

327) The Defendants had a "Duty of Candor" under title 37 Federal Regulations 1.56 to identify all inventors and material prior art.

328) The Defendants, over a period of years, sent via US mail and wire, hundreds of documents inclusive of signed declarations and oaths under penalty of perjury but never disclosed Plaintiff's prior art or inventorship.

329) Defendants utilized US mail and wire for the purpose of defrauding Plaintiff of intangible assets.

330) Beretta and De Giuseppe exported Plaintiffs know-how and AGS trade secrets through US mail and wire services to foreign entity they controlled.

331) Tenax utilized US mail and wire to submit patent drawings based upon Exhibit 8 US Pat No 20030178122 "Evidence of certain improvement" and then Tenax utilized US mail and wire to apply for as the US Pat No. 12/087/731 which claims priority to February 22, 2006 filing of the MI2006A000320.

332) Tenax signed declarations and oaths and corresponded with USPTO via US mail and wire and intentionally non-joined Ianniello as an inventor and intentionally failed to disclose US Pat Application 20030178122.

333) March 29, 2006, Nath and Associates Ross Epstein introduced

79

himself to Peter Ianniello and represented himself as the "Independent Third Party Administrator" of US Pat Application 20030178122 as well as other intangible assets of the Plaintiff.

334) July 2006 Nath and Associates utilized US mail and wire and advised Piper DLA's Anthony Rosso that it possessed the Master Agreement and resolved all representation conflicts that existed.

335) Nath and Associates misrepresented to USPTO that at all times it performed its duties under Rule 56 to disclose all material prior art and inventors.

336) Nath and Associates had in its possession photographs of US Pat Application 20030178122 as a resulting of possessing the Master Agreement.

337) Over a period of years, Nath and Associates corresponded with USPTO on more than 50 occasions and sent them via US mail and wire hundreds of pages; but Nath and Associates never provided drawings and/or the photographs of US Pat Application 20030178122; and never disclosed to USPTO the existence of the Tenax SpA filing of US Pat No. 12/087/731.

338) Page 5 Paragraph 6 WARRANTS AND INDEMNIFICATIONS states:

339) *Representation and Warranties of AGS; AGS represents and warrants to Ianniello that AGS has the full and unencumbered right, power, and authority to enter into this agreement…*

340) AGS Cesare Beretta misrepresented his warrants as Tenax seized control of "Exhibit 8 "Evidence of Certain Improvements to US Pat Application 20030178122; and filed US Pat No. 12/087/731 and misrepresented to USTPO whom the inventors were and who was

assignee.

341) Upon information and belief, Nath had existence of Modiano and Associates.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court:

A.    Declare that defendants committed intentional misrepresentation against Plaintiff.

B.    Enter judgment in favor of Ianniello and against Defendants jointly and severally, for either:

1. The value of Plaintiff's AGS membership interest as of December 2004 as reported in the 2004 Legg Mason Report as well as by Beretta and Capra;

2. The value Plaintiff would have derived from a reasonable royalty as determined by an expert; or,

3. The lost profits as determined by an expert that Defendants were unjustly enriched by the sales of Plaintiff inventions.

4.    Award Ianniello attorney's fees plus treble damages and court costs and any such other and further relief as justice may require.

Peter J. Ianniello, pro se
2000 Level Rd
Havre de Grace, Maryland 21078
Peter. J. Ianniello @ gmail.com
410-937-2687

2-24 2010

COUNT NINE

**Ianniello v. Tenax, AGS, Beretta, Gianonni, Spruger, Kulzoff, de Giuseppe, and Nath:**

### Inducement to a Contract

Plaintiffs hereby incorporate Paragraphs One through Three Hundred and Fifty Three (¶¶ 1-341), inclusively, and further state as follows:

342) 25. December 2005 Patent Assignment, License, Release, Royalty, and Dividend Distribution Agreement states "

a) *WHEREAS, Ianniello has ownership interests in one or more United States and Foreign patents and patent applications;*

b) *WHEREAS, Tenax uses much of the technology claims in the core patents owned by AGS*

c) *WHEREAS, Ianniello is an inventor on all the Patents and is dependent upon access to the patents through the license agreements referenced herein for his future economic benefit;*

d) *1.4 WHEREAS the INVENTORS and Tenax warrant that other than as set forth in this Agreement and the EXHIBITS attached hereto, they have not assigned or attempted to assign any Patent to any Person or entity other than AGS…Except as may be consistent with the licenses referred to in Section 1.7 through 1.10, the inventors and Tenax shall not assign or attempt to assign the Patents to any person or entity other than AGS.*

e) *1.5 The inventors and Tenax shall promptly execute all papers necessary in connection with any Patent…including foreign counterparts…and also execute separate assignments in connections with such applications.*

f) *1.6 The Inventors and Tenax hereby sell, assign, and transfer to AGS all improvements to the Patents created or conceived on or before the Effective Date and shall communicate to AGS any facts known to the Inventors and Tenax regarding any improvements created or conceived on or before the Effective Date…Attached as Exhibit 8 is evidence of certain improvements to the Patents created or conceived by Tenax, AGS or their affiliates…*

g) *1.15 After the effective date, the parties hereto hereby agree that a continuation in part or new patent application may be filed by AGS regarding the "yellow rib high friction geonet' which will list Ianniello and any other inventor at Tenax as a named inventor on the continuation-in-part or new patent application…A photo and any other description of the "yellow rib friction geonet" is set forth on Exhibit 8. Ianniello and any other inventor hereto hereby agree to make an assignment of all right, title, and interests to the continuation in part or new patent application for the "yellow rib geonet: identical to the assignment of rights set forth in Section 1.1upon request of AGS after such continuation-in-part or new patent application is filed with the USPTO. AGS hereto hereby agrees to amend EXHIIT 5 (B)(ii) to add the "yellow rib high friction geonet" to the list of patent applications licensed there under to Ianniello after such continuation-in-part is filed with the USPTO.*

h) Page 32 of the Patent Assignment, License, Release, Royalty, and Dividend Distribution Agreement states "Exhibit 8; Evidence of Certain Improvements"

i) Exhibit 8 photograph for "evidence of certain improvements" for the Ianniello "Patent Application # 20030178122; High Friction scrims, geonets, laminates and methods for using and making them" are color photographs and images owned by Ianniello and sent electronically from Ianniello's counsel Piper DLA's Anthony Rosso on November 25, 2005 to Saul Ewing's Eric Orlinski.

j) Page 2, Section 3.1 of the License Agreement for US Patent Application states " *AGS shall appoint an independent third party administrator (TPA) to administer prosecution and maintenance of the Patents within 15 Days of the Effective Date of the Agreement. AGS shall notify Ianniello in writing of its selection of the TPA.*

343) AGS, Tenax, and Cesare Beretta are in breach section of 3.1 of this Agreement.

344) Cesare Beretta and Giulio de Giuseppe in their roles at Tenax and AGS represented Nath was the TPA. However, after the Defendants Cesare Beretta, Giulio de Giuseppe, Tenax, and AGS committed the following acts:

i) On Feb 22, 2006, Tenax directed Modiano of Milan, Italy (and not Nath the purported TPA) to file a new patent application based upon "Exhibit 8, Evidence of Certain Improvements for US Pat No. 20030178122".

ii) Defendants utilized US mail, wire, electronic communications to breach this agreement and deprive Plaintiffs of intangible asset property rights for US Pat Application 20030178122; Serial #10/366691 filed February 14, 2003 "High Friction

scrims, geonets, laminates, and methods for using and making them" and U.S. Pat. App. Ser. No.: 12/087,731 ('731 application), filed July 14, 2008 entitled "Sheet-Like Element Such As a Net, Particularly For Geotechnical Applications" with named inventor Maggioni.

iii) On November 22, 2005 Giulio De Giuseppe, Tenax President and AGS Manager, utilized wire to communicate with Peter Ianniello terms of Master Agreement Paragraph 1.15 and further stated "I need to send them to Italy before signing".

iv)  On November 25, 2006, Piper DLA attorney, Anthony Rosso sent over wire to Eric Orlinski and Giulio De Giuseppe photos belonging to Peter Ianniello; and these same photos were utilized to produce Master Settlement Exhibit 8 "Evidence of Certain Improvements" for US Patent Application # 20030178122.

v) On February 22, 2006, Tenax filed MI2006A000320 at the Italian patent office with drawings produced from the photographs obtained from the Master Settlement Agreement's Exhibit 8 "Evidence of Certain Improvements" for US Patent Application 20030178122 that identifies Ianniello as the inventor.

vi)  Although US Patent Application 20030178122 was assigned and accepted by Tenax and AGS via US Mail and wire, the entities Beretta and de Giuseppe controlled; Tenax and its officers never disclosed to the Italian Patent office the existence of US Pat Application 20030178122 as being relevant prior art to the February 22, 2006 filing of the MI2006A000320.

vii) On July 14, 2008, the Defendants utilized the US mail and

86

wire to file in the United States of America US Pat No 12/087/731; the Defendants claimed priority to MI2006A000320 filed in Italy on February 22, 2006; but never identified for USPTO US Patent Application 20030178122 filed in the USA on February 14, 2003.

viii) On July 14, 2008, Tenax utilized the US mail and wire to certify under penalty of perjury that the Tenax complied with USPTO in accordance with Title 37, Code of Federal Regulations 1.56 and that Tenax fulfilled its duty of candor to USPTO in that they properly identified all inventors, and that they disclosed all relevant prior art.

ix) Since July 14, 2008 until January 7, 2010 Tenax and the USPTO corresponded via US mail and wire on at least 40 occasions and the Tenax supplied hundreds of documents via US mail and wire and never disclosed Plaintiffs US Pat Application 20030178122.

x) The Defendants had a "Duty of Candor" under title 37 Federal Regulations 1.56 to identify all inventors and material prior art.

xi) The Defendants, over a period of years, sent via US mail and wire, hundreds of documents inclusive of signed declarations and oaths under penalty of perjury but never disclosed Plaintiff's prior art or inventorship.

xii) Defendants utilized US mail and wire for the purpose of defrauding Plaintiff of intangible assets.

xiii) Beretta and De Giuseppe exported Plaintiffs know-how and AGS

trade secrets through US mail and wire services to foreign entity they controlled.

xiv) Tenax utilized US mail and wire to submit patent drawings based upon Exhibit 8 US Pat No 20030178122 "Evidence of certain improvement" and then Tenax utilized US mail and wire to apply for as the US Pat No. 12/087/731 which claims priority to February 22, 2006 filing of the MI2006A000320.

xv) Tenax signed declarations and oaths and corresponded with USPTO via US mail and wire and intentionally non-joined Ianniello as an inventor and intentionally failed to disclose US Pat Application 20030178122.

xvi) March 29, 2006, Nath and Associates Ross Epstein utilized US electronic wire communication to introduce himself to Peter Ianniello as the "Independent Third Party Administrator" of US Pat Application 20030178122 as well as other intangible assets of the Plaintiff.

xvii) July 2006 Nath and Associates utilized US mail and wire and advised Piper DLA's Anthony Rosso that it possessed the Master Agreement and resolved all representation conflicts that existed.

xviii)     Nath and Associates utilized US mail and wire through out its prosecution of US Pat Application 20030178122 and represented to USPTO that at all times it performed its duties under Rule 56 to disclose all material prior art and inventors.

xix) Nath and Associates had in its possession photographs of US

Pat Application 20030178122 as a resulting of possessing the Master Agreement.

xx) Over a period of years, Nath and Associates corresponded with USPTO on more than 50 occasions and sent them via US mail and wire hundreds of pages; but Nath and Associates never provided drawings and/or the photographs of US Pat Application 20030178122; and never disclosed to USPTO the existence of the Tenax SpA filing of US Pat No. 12/087/731.

b) Page 5 Paragraph 6 WARRANTS AND INDEMNIFICATIONS states:
   *Representation and Warranties of AGS; AGS represents and warrants to Ianniello that AGS has the full and unencumbered right, power, and authority to enter into this agreement…*

c) AGS, Tenax, and Cesare Beretta are in breach section of the WARRANTS of this Agreement.

d) *BREACH AND REMEDIES: In the event of a breach of this Agreement the non breaching party will suffer irreparable harm and will be entitled to specific performance and/or permanent injunctive relief to enforce this Agreement without the need to post bond and that such relief shall be in addition to and not in lieu of any monetary damages or other relief a court of competent jurisdiction, whether at law or equity may award.*

WHEREFORE, the Plaintiffs respectfully request that this Honorable Court:

A.   Determine whether Defendants intentionally induced Plaintiff into contract.

B.    Determine whether Defendants intentionally concealed and committed material nondisclosure to Plaintiff.

C.   Declare the Defendants intentionally concealed and non-disclosed and  award Plaintiff damages, legal fees and costs any such other and further relief as justice may require.

D.   Enter judgment in favor of Ianniello and against Beretta, de Giuseppe, Tenax, Nath and Zelios jointly and severally, for either:

1. The value of Plaintiff's AGS membership interest as of December 2004 as reported in the 2004 Legg Mason Report as well as by Beretta and Capra;

2. The value Plaintiff would have derived from a reasonable royalty as determined by an expert; or,

3. The lost profits as determined by an expert that Defendants were unjustly enriched by the sales of Plaintiff inventions.

4. Award Ianniello attorney's fees plus treble damages and court costs and any such other and further relief as justice may require.

Peter J. Ianniello, pro se
2000 Level Rd
Havre de Grace, Maryland 21078
Peter. J. Ianniello @ gmail.com
410-937-2687

2-24-2009

## COUNT TEN

### Ianniello v. Tenax, AGS, Zelios, Beretta, de Giuseppe, Gianonni, Spruger, Kulzoff, and Nath:

### Intentional Concealment/Non-Disclosure of Information

Plaintiffs hereby incorporate Paragraphs One through Three Hundred and Forty four (¶¶ 1-344), inclusively, and further state as follows:

1. As part of the Master Settlement Agreement, Plaintiff entered into assignment and license agreements for Ianniello Patent Estate intangible assets with Tenax and AGS.

2. Paragraph 3.1 "Intellectual Property" had the express provisions that Defendant AGS, under the control of Tenax, would appoint an "independent third party administrator".

3. Saul Ewing acted as Tenax Counsel to prepare the Master Settlement Agreement inclusive of the assignments and license agreements.

4. March 29, 2006, Nath and Associates advised Plaintiff Ianniello that it was selected to be the "independent" TPA.

5. Over a period of years, Nath and Associates as well as Tenax and AGS made it futile for the Plaintiff to see to the "independent" administration of the agreements.

6. November of 2009, Plaintiff learned that Nath and Associates is a Saul Ewing affiliate and as such concealed its identity.

7. Upon information and belief, Tenax, AGS, and Nath and Associates intentionally concealed the affiliate relationship between Nath and Associates and Saul Ewing for the purpose of

91

defrauding Plaintiff from his intangible assets.

8. This intentional non-disclosure of information was a material omission by Defendants.

9. Beretta, Tenax, de Giuseppe, Zelios, Nath AGS concealed Gianonni, Spruger and Kulzoff from Plaintiff.

10.   Beretta, De Giuseppe, Tenax, Zelios, AGS concealed Syntec from Plaintiff and Syntec now benefits from Ianniello Patent Estate and AGS membership.

WHEREFORE, the Plaintiffs respectfully request that this Honorable Court:

A.    Determine whether Defendants intentionally concealed and committed material nondisclosure to USPTO.

B.    Determine whether Defendants intentionally concealed and committed material non-disclosure to Plaintiff.

C.    If it is determined that Defendants intentionally concealed and non-disclosed award Plaintiff damages, legal fees and costs any such other and further relief as justice may required.

E.    Enter judgment in favor of Ianniello and against Beretta, deGiuseppe, Tenax, Nath and Zelios jointly and severally, for either:

1.    The value of Plaintiff's AGS membership interest as of December 2004 as determined by an expert;

2.    The value Plaintiff would have derived from a reasonable royalty as determined by an expert; or,

3.    The lost profits as determined by an expert that Defendants were unjustly enriched by the sales of Plaintiff inventions.

4.    Award Ianniello attorney's fees plus treble damages and court costs and any such other and further relief as justice may require.

Peter J. Ianniello, pro se
Havre de Grace, Maryland 21078
Peter. J. Ianniello @ gmail.com
410-937-2687

2-2+-2010

93

## COUNT ELEVEN

### Ianniello v. Tenax, Zelios, Beretta, De Giuseppe, and AGS:

### Invalidity of Contract

Plaintiffs hereby incorporate Paragraphs One through Three Hundred and Fifty Six (¶¶ 1-356), inclusively, and further state as follows:

This is an action for declaratory judgment pursuant to § 3-406 of the Courts and Judicial Proceedings Article of the Annotated Code of Maryland, for the purpose of determining a question of actual controversy between the parties.

357. On December 19, 2005, Ianniello entered into the Master Settlement Agreement, AGS was a party to the Master Settlement Agreement.

358. AGS' majority member is Zelios.

359. Zelios owns a 56% interest in AGS.

360. Upon information and belief, Zelios was not in good standing when it entered into the Master Settlement Agreement.

361. Because Zelios was not in good standing, it had no authority to enter into the Master Settlement Agreement. Accordingly, it is not the owner of the patents that were assigned to it per the Master Settlement Agreement.

362. Instead, the patents that comprise the patent portfolio are the property of the individual inventors.

363. There is an actual controversy of a justifiable issue involving the rights and liabilities of the parties under the Master Settlement Agreement, and whether said Agreement is valid, which controversy may be determined by a judgment of this Court.

94

WHEREFORE, the Plaintiffs respectfully request that this Honorable Court:

A.   Determine whether Zelios was a lawful entity able to exercise its assent on behalf of AGS to enter into the Master Settlement Agreement;

B.   If it is determined that Zelios had no authority to enter into the Patent Agreement on behalf of AGS, then declare that the individual patents comprising AGS' assets be returned to the inventors; and,

C.   Enter judgment in favor of Ianniello and against Beretta, de Giuseppe, Tenax, Nath and Zelios jointly and severally, for either:

1.   The value of Plaintiff's AGS membership interest as of December 2004 as determined by a reasonable expert;

2.   The value Plaintiff would have derived from a reasonable royalty as determined by an expert; or,

3.   The lost profits as determined by an expert that Defendants were unjustly enriched by the sales of Plaintiff inventions.

4.   Award Ianniello attorney's fees plus treble damages and court costs and any such other and further relief as justice may require.

Peter J. Ianniello, pro se
2000 Level Rd
Havre de Grace, Maryland 21078
Peter. J. Ianniello @ gmail.com
410-937-2687

2-24-2010

## DECLARATORY JUDGMENT I

### Ianniello v. Tenax, Nath, Beretta, de Giuseppe, and

AGS:

## Violation of 35 U.S.C. § 116 and § 256 and other provisions of U.S.C.

## 100 et seq

Plaintiffs hereby incorporate Paragraphs One through Three Hundred and Sixty Three (¶¶ 1-365), inclusively, and further state as follows:

366. Tenax, AGS, and Nath had to identify all inventors and material information that a reasonable examiner considers material to patentability.

367. Defendant filed oaths and declarations to USPTO certifying that it identified all inventors and provided all material information required for patentability but Defendant Tenax non-joined Plaintiff on the following US Patents:

 a)  US Pat No 5,255,998, "Multiple Layer Net Structure for fluid drainage particularly for geotechnical use" filed November 6, 1992 and issued on Oct 26, 1993;

 b) US Pat No 5,891,549 " Sheet Like structure with surface protrusions for providing grip enhancing draining elements and the like" filed September 24, 1997 and issued on April 6, 1999;

 c) US PAT NO 6,972,269, Net Like Structure particularly for geotechnical use" filed March 13, 2000, and issued on December 6, 2005.

368. Defendant failed to disclose Plaintiff Ianniello prior art and

96

other information material to patentability on the following US patent
applications;

    d) Tenax U.S. Pat. App. Ser. No.: 12/087,731 ('731 application),
       entitled "Sheet-Like Element Such As a Net, Particularly For
       Geotechnical Applications" with named inventor Maggioni;

    e) U.S. Pat. App. Ser. No.: 11/599,307 ('307 application), entitled
       "Multilayer Net for Draining Fluids, Particularly for
       Geotechnical Use" with named inventor Maggioni;

    f) U.S. Pat. App. Ser. No.: 12/232,017 ('017 application), entitled
       "Draining and filtering net, particularly for geotechnical
       applications" with named inventor Beretta;

    g) U.S. Pat. App. Ser. No.: 11/167,561 ('561 application), entitled
       "High-Friction geo-textiles for increasing the stability of
       landfill drainage layers and other high-friction angle.

369. The December 2005 Patent Assignment, License, Royalty and
Dividend Distribution Agreements entered into between the Plaintiff
and Tenax, AGS, and Zelios states: *"**WHEREAS, Ianniello is an inventor
on all the Patents and is… dependent upon access to the patents… for
his future economic benefit;***

370. Plaintiff filed US Pat Application 20030178122; Serial #10/366691
on February 14, 2003 "High Friction scrims, geonets, laminates, and
methods for using and making them" and; Defendant Tenax filed at USPTO
on July 14, 2008 entitled U.S. Pat. App. Ser. No.: 12/087,731 ('731
application). "Sheet-Like Element Such As a Net, Particularly For
Geotechnical Applications" with named inventor Maggioni.

371. In December of 2005, Ianniello US Patent Application 20030178122 was assigned to AGS.

372. On February 22, 2006, Tenax filed MI2006A000320 at the Italian patent office with drawings produced from the photographs obtained from the Patent Assignment, License, Royalty and Dividend Distribution Agreement's Exhibit 8 "Evidence of Certain Improvements" for the Ianniello US Patent Application 20030178122.

373. Tenax never disclosed to the Italian Patent office the existence of US Pat Application 20030178122 as being relevant prior art to the February 22, 2006 filing of the MI2006A000320.

374. Tenax filed on July 14, 2008, US Pat No 12/087/731; claiming priority to MI2006A000320 filed in Italy on February 22, 2006; but never disclosed Ianniello US Patent Application 20030178122 filed in the USA on February 14, 2003.

375. Tenax engaged Modiano of Milan, Italy to prosecute at USPTO US Pat No 12/087/73; and engaged Nath and Associates, the Saul Ewing affiliate, to prosecute the Ianniello US Patent Application 20030178122.

376. On July 14, 2008, Tenax certified under penalty of perjury Tenax complied with USPTO in accordance with Title 37, Code of Federal Regulations 1.56 and that Tenax fulfilled its duty of candor to USPTO in that they properly identified all inventors, and that they disclosed all relevant prior art.

377. Tenax, AGS and Nath signed declarations and oaths for USPTO and certified under penalty of perjury that they supplied all material information that a reasonable examiner should consider for

98

patentability  including  prior  art  and  also  certified  that  all inventors were disclosed.

WHEREFORE, the Plaintiffs respectfully request that this Honorable Court:

A.   Determine whether Tenax, AGS, and or Nath breached their duty of candor to USPTO related to:

a. US Pat No 5,255,998, "Multiple Layer Net Structure for fluid drainage particularly for geotechnical use" filed November 6, 1992 and issued on Oct 26, 1993;

b. US Pat No 5,891,549 " Sheet Like structure with surface protrusions for providing grip enhancing draining elements and the like" filed September 24, 1997 and issued on April 6, 1999;

c. US PAT NO 6,972,269, Net Like Structure particularly for geotechnical use" filed March 13, 2000, and issued on December 6, 2005.

d. Tenax U.S. Pat. App. Ser. No.: 12/087,731 ('731 application), entitled "Sheet-Like Element Such As a Net, Particularly For Geotechnical Applications" with named inventor Maggioni;

e. U.S. Pat. App. Ser. No.: 11/599,307 ('307 application), entitled "Multilayer Net for Draining Fluids, Particularly for Geotechnical Use" with named inventor Maggioni;

f. U.S. Pat. App. Ser. No.: 12/232,017 ('017 application), entitled "Draining and filtering net, particularly for geotechnical applications" with named inventor Beretta;

g. U.S. Pat. App. Ser. No.: 11/167,561 ('561 application), entitled "High-Friction geo-textiles for increasing the

stability of landfill drainage layers and other high-friction angle.

B.   Declare if Tenax, AGS, violated duties to USPTO on any patents and patent applications (a)-(g) then declare that these patents are no longer valid nor are these patents and patent applications enforceable for Tenax or AGS.

C.   Declare that if Tenax, AGS or Nath violated duties to USPTO then Plaintiff's rights to now practice patents (a) - (g) are valid and enforceable in the future.

D.   Assess punitive damages, attorney's fees and costs on the Defendants, and any such other further relief as justice may dictate.

Enter judgment in favor of Ianniello and against Defendants jointly and severally, for either:

1. The value of Plaintiff's AGS membership interest as of December 2004 as determined by an expert.

2. The value Plaintiff would have derived from a reasonable royalty as determined by an expert; or,

3. The lost profits as determined by an expert that Defendants were unjustly enriched by the sales of Plaintiff inventions.

4. Award Ianniello attorney's fees plus treble damages and court costs and any such other and further relief as justice may require.

Peter J. Ianniello, pro se
2000 Level Rd
Havre de Grace, Maryland 21078
Peter. J. Ianniello @ gmail.com
410-937-2687
2-24-2010

### DECLARATORY JUDGMENT II

**Ianniello v. Tenax, Zelios, and AGS: Rescission of Contracts**

Plaintiffs hereby incorporate Paragraphs One through Three Hundred and Seventy Three (¶¶ 1-373), inclusively, and further state as follows:

374)   The Plaintiffs hereby reincorporate the allegations contained in Paragraphs One through three hundred and ninety and state:

375) This is an action for declaratory judgment pursuant to § 3-406 of the Courts and Judicial Proceedings Article of the Annotated Code of Maryland, for the purpose of determining a question of actual controversy between the parties.

376) On December 19, 2005, Ianniello and Williams entered into the Master Settlement Agreement.

377) AGS was a party to the Master Settlement Agreement.

378) AGS' majority member is Zelios.

379) Zelios owns a 56% interest in AGS.

380) Upon information and belief, Zelios was not in good standing when it entered into the Patent Assignment Agreement.

381) Because Zelios was not in good standing, it had no authority to enter into the Patent Assignment Agreement. Accordingly, it is not the owner of the patents that were assigned to it per the Patent Assignment Agreement.

382) Instead, the patents that comprise the patent portfolio are the property of the individual inventors.

383) There is an actual controversy of a justifiable issue involving the rights and liabilities of the parties under the Master Settlement Agreement, and whether said Agreement is valid, which

103

controversy may be determined by a judgment of this Court.

WHEREFORE, the Plaintiffs respectfully request that this Honorable Court:

A.   Determine whether Zelios was a lawful entity able to exercise its assent on behalf of AGS to enter into the Master Settlement Agreement;

B.   Alternatively, if it is determined that Zelios had no authority to enter into the Patent Agreement on behalf of AGS, then declare that the individual patents comprising AGS' assets are the property of the individual inventors; and,

C.   Enter judgment in favor of Ianniello and Defendants jointly and severally, for either:

1. The value of Plaintiff's AGS membership interest as of December 2004 as reported in the 2004 as determined by an expert.

2. The value Plaintiff would have derived from a reasonable royalty as determined by an expert; or,

3. The lost profits as determined by an expert those Defendants were unjustly enriched by the sales of Plaintiff inventions.

4.   Award Ianniello attorney's fees plus treble damages and court costs and any such other and further relief as justice may require.

Peter J. Ianniello, pro se
2000 Level Rd
Havre de Grace, Maryland 21078
Peter. J. Ianniello @ gmail.com
410-937-2687

2-24-2010

105

**Certificate of Service**

I HEREBY CERTIFY that on February 24, 2010, that a copy of the foregoing Plaintiffs' Complaint was hereby delivered electronically, and via first-class mail, postage prepaid, to:

Daniel R. Chemers, Esq.
Erika E. Rose, Esquire
Saul Ewing, LLP
500 East Pratt Street, Suite 900
        Baltimore, Maryland 21202,
        *Attorneys for Tenax Corporation*

Alan F. M. Garten, Esq.
Brandi L. Phillips, Esquire
Fedder and Garten Professional Association
        36 South Charles Street, #2300
Baltimore, Maryland 21201
*Attorneys for Advanced Geotech Systems, LLC; Zelios, Giannoni, Spruger, Kulzoff*

Jerald L. Meyer, Esq.
Nath & Associates, LLC
·112 South West Street
Alexandria, Virginia 22314
*Resident Agent for Nath & Associates, LLC*

Mr. Giovanni Capra
4800 East Monument Street
Baltimore, Maryland 21205
*Resident Agent for Syntec, LLC*

Cesare Beretta
4800 East Monument Street
Baltimore, Maryland 21205

Giulio de Giuseppe
Mr. Giovanni Capra
4800 East Monument Street
Baltimore, Maryland 21205

Peter J. Ianniello, pro se
2000 Level Rd
Havre de Grace, Maryland 21078
Peter. J. Ianniello @ gmail.com
410-937-2687

2-24-2010